## Shore v. Zoning Board of Adjustment

*E. Unterberger*, for plaintiff.

*Abraham L. Freedman*, city solicitor, and *Matthew W. Bullock, Jr.*, assistant city solicitor, for defendant.

LEVINTHAL, J., January 19, 1955.—This is an appeal from an order of the Philadelphia Zoning Board of Adjustment, refusing to grant a variance or a use registration permit for the use of premises 5023-25

Market Street (northeast corner of Market and Farson Streets) as a retail store, seven housekeeping units and one nonhousekeeping unit.

The board based its refusal to grant the variance or permit upon the failure of the structure to comply with the requirements of the Philadelphia Zoning Ordinance of August 10, 1933, relating to the width of the side yard, and the Housing and Sanitation Act of June 11, 1915, P. L. 954, sec. 6, as amended May 26, 1943, P. L. 623, sec. 1, 53 PS §3891, relating to the area of the open space attached to the building.

1. *Alleged failure to comply with the zoning ordinance prohibiting multiple occupancy in a structure with limited side yard.*

Section 16(40) of the Philadelphia Zoning Ordinance of August 10, 1933, which is applicable to "A" commercial districts, such as the one in which the property here involved is located, provides:

"SIDE YARDS AND OPEN COURTS. *When side yards or open courts are used,* except open courts between wings of the same building, they shall have the following minimum widths:

"(a) Single-family dwellings and duplex dwellings, three (3) feet.

"(b) Multiple dwellings and buildings other than dwellings, not over three (3) stories in height, five (5) feet.

"(c) . . ." (Italics supplied.)

Section 2(18) (*b*) defines a side yard as:

"A yard between the building or attached structure and the adjacent side line of the lot and extending from the front yard to the rear yard."

Section 4(2) permits any use existing at the time of the passage of the ordinance (August 10, 1933) to continue thereafter, notwithstanding the fact that such use may be otherwise inconsistent with the provisions of the ordinance.

Although on cursory examination it may appear that the ordinance gives a reasonable definition of the term "side yard", it soon becomes obvious that this is not necessarily so. In the present case, there is a space of approximately seven feet between the east wall of petitioner's building and the west wall of the adjacent building. The property line happens to run approximately midway between the buildings, and as a result both buildings are limited by the ordinance to single or duplex occupancy since the side yard of each is less than five feet wide. Under the ordinance there is no requirement that a structure in a class "A" commercial zone must have a side yard. It is only where there is such a side yard that the minimum width of it limits the character of the occupancy of the building. Thus, in the instant case, if one neighbor should deed his side yard of three and a half feet to the other, the effect of such a conveyance would be to permit both buildings to be used as multiple dwellings, since one would then have a side yard of seven feet while the other would have no side yard, as defined by the ordinance. It is clear that the definition, drastic as it may be in the instant case, may be justified by reason of the general utility of preventing congestion which may occur in the future should the neighbor rebuild his structure up to the property line.

There is, however, no need for us to rule upon the reasonableness of the definition of a side yard in the ordinance, as applied to the subject matter here involved, since in our view of the case petitioner had acquired nonconforming use rights permitting multiple occupancy. It is conceded that the property was used as a multiple dwelling prior to August 10, 1933, when the ordinance was adopted. At that time the structure was used for six dwelling units. Its present use is therefore merely an extension of the prior legal nonconforming use.

Petitioner is entitled to this extension under the doctrine enunciated by the Supreme Court in Davis Appeal, 367 Pa. 340 (1951). The applicant in that case was the owner of a structure used as a three-family residence prior to the adoption of the zoning ordinance, which provided that the premises should be zoned "A" residential and restricted to use by a maximum of two families. Subsequent to the adoption of the ordinance, the owner converted the building into a four-family dwelling. The court of common pleas reversed the order of the zoning board of adjustment which had sustained petitioner's contention that the use as a four-family residence was legal. The Supreme Court, after an extensive review of the question of nonconforming use, stated at page 346:

"Once lawfully established as a nonconforming use they (the owners of the property) could enlarge that use 'by natural expansion'. This did not constitute a new or different use but an increase of the existing use as a multiple dwelling house. Could it be argued that if, for example, the operation of a hotel constituted a nonconforming use under the terms of a zoning ordinance, and if at the time of the enactment of the ordinance it had a certain number of guest rooms, it could not subsequently legitimately increase the number by a process of subdivision?"

The zoning board of adjustment should have recognized the right of petitioner to expand the nonconforming use of her building. In the present case the "natural expansion" was approximately 20 percent, while in the Davis case it was 33⅓ percent. Although it is true that such mathematical analysis cannot always be the basis for determining the validity of a precedent, it is obvious that the expansion in the present case was proportionately less significant than that in the Davis case. The zoning board, recognizing that the Davis case is a cogent authority against its

position, has argued that that decision is not applicable where increasing the number of apartments aggravates an overcrowded condition and creates a health and sanitation problem. The facts of the present case, however, do not require us to examine the validity of this theory, since it was admitted by counsel for the zoning board that there is actually no overcrowding in this property, there being a total of only 15 individuals residing in all of the eight dwelling units. (It should also be noted that the number of the occupants cannot be appreciably increased hereafter, in view of the provisions of the Ordinance of August 5, 1954.)

We therefore hold that the present use of the property as a store, seven housekeeping units and one non-housekeeping unit is a permissible expansion of non-conforming use rights, under section 4 of the Philadelphia Zoning Ordinance of 1933.

2. *Alleged failure to comply with open area requirements of the Housing and Sanitation Act.*

The Housing and Sanitation Act of June 11, 1915, P. L. 954, sec. 6, as amended May 26, 1943, P. L. 623, sec. 1, 53 PS §3891, provides:

"No building shall be occupied as a tenement unless it shall have appurtenant to it in the rear or at the side, and as a part of the lot upon which it is located, an open space equal to at least twenty per centum of the entire area of such lot . . . Provided . . . *such open space attached to every tenement shall be at least eight feet in width throughout its entire length. . . .*" (Italics supplied.)

Petitioner's structure consists of two adjacent buildings, so associated as to be used as a single property, having a frontage of 32 feet on Market Street. The westwardmost half of the structure, the building fronting on Farson Street, occupies the full 90 feet depth of the lot to a three-feet wide alley, while the eastwardmost building has a depth of 65 feet, leaving

a rear yard approximately 20½ feet deep to the alley. While there is therefore no yard to the rear of one half of the property, there is a yard 20½ feet deep to the rear of the other half.

Both petitioner and the board assumed that such a rear yard distribution was a violation of the above section of the act, which they interpreted as requiring an eight-feet wide open space over the entire width of the lot. Such a construction is based on the assumption that the possessive pronoun *"its"*, as used in the section of the statute above italicized, is meant to refer to the lot upon which the tenement is situated. This would be a strained construction, since the word "lot" is not found in close proximity to the pronoun. *"Its"* is plainly meant to refer to *"such open space"*. This construction appears to us not only to be grammatically correct, but also consistent with the objectives of the statute.

The Housing and Sanitation Act provides that a certain portion of the area of the lot must consist of open space. The purpose of this requirement is not only to provide light and air for the immediately adjacent structures, but also to afford a recreational area for the neighborhood and especially for the people dwelling in the adjacent properties. A narrow plot of ground surrounding the tenement, although satisfying the percentum requirement, might not provide for these other needs. Therefore it was provided that the open area should be at least eight feet wide throughout its length. It may be noted that the statute uses the term *width* in a sense antithetical to *length*, that is, as descriptive of the lesser of the two dimensions of the open space. Such a plot with a minimum width of eight feet must have an area of at least 64 square feet.

We find, therefore, that the rear yard attached to the property involved in this case, being about 15 feet

wide and 20½ feet deep, conforms to the eight-feet minimum width requirement of the Housing and Sanitation Act.

The order of the zoning board is accordingly reversed. No variance under the Housing and Sanitation Act is required for the reasons aforementioned. The Zoning Board of Adjustment is directed to issue a use registration permit under the Philadelphia Zoning Ordinance, permitting the use of the premises at 5023-25 Market Street as a store, seven housekeeping units, and one nonhousekeeping unit.