In the Matter of the Application of 440 EAST 102ND STREET CORP., Petitioner, Respondent, against HARRIS H. MURDOCK and Others, Constituting the Board of Standards and Appeals of the City of New York, Appellants.

First Department, November 22, 1940.

*James Hall Prothero* of counsel [*Paxton Blair* and *Jeremiah M. Evarts* with him on the brief; *William C. Chanler, Corporation Counsel*], for the appellants.

*Leonard Acker* of counsel [*Edgar A. Palmieri*, attorney], for the respondent.

CALLAHAN, J. This is an appeal from an order of Special Term annulling a determination of the board of standards and appeals which revoked permits and a certificate of occupancy granted to petitioner by the department of housing and buildings for the use of certain premises as a gasoline service station.

The premises involved are on the southwest corner of East River drive and East One Hundred and Second street in the borough of Manhattan, city of New York, and measure approximately 125 by 105 feet. Prior to December 7, 1934, these premises were in an unrestricted zone, but on the date mentioned the section was rezoned so that all but a very small portion of the property was placed in a residential area.

In 1935 several buildings on the property were demolished in connection with the condemnation of land for the East River drive. Thereafter another building, which remained after the condemnation, was destroyed by fire. Prior to the condemnation and the fire the premises consisted of four buildings, with an open courtyard in the center. These buildings were a one-story brick building forty-eight by fifty-nine feet on the southwesterly corner of the property, a one-story frame structure, fifty-five by sixty-five feet at the northwesterly corner thereof, a three-story brick building at the southerly end of the plot, and a large wooden shed about seventy-five by one hundred feet on the easterly side. The last two buildings were demolished in connection with the condemnation. The building on the northwest corner was the one destroyed by fire. This left standing only the one-story brick building at the southwesterly corner of the property.

The proof disclosed that all parts of the premises, including the yard space as well as the structures, had been used continuously for stable purposes and as a junk yard from a date prior to July 25, 1916, down to the time of the issuance of the permits involved herein. The board found such a continued use, and there was evidence to support its finding. We see no reason to disturb it.

In 1939, shortly before the issuance of the permits involved herein, the owner transformed the property into a modern gasoline service station. Six 550-gallon tanks were placed under the surface of the plot. Six gasoline pumps in three separate batteries were erected in the space formerly covered by the three demolished buildings and the open yard. All of the open area was cemented and paved. Curb cuts were made into One Hundred and Second street to permit access to automobiles. The former stable on the southwest corner of the plot (the only building remaining thereon) was stuccoed on the outside, and a brick wall which stood on the southerly side of the property was similarly stuccoed.

The applications to the department which issued the permits showed that the remaining building was to be used for an office for the gasoline station and for accessory purposes. However, there is a finding that the interior of the building had not been so altered up to the time of the commencement of the present

proceedings. The permits to occupy the premises as a gasoline station were granted by the department of housing and buildings upon its determination that the prior continued use of the premises as a stable permitted the change of use to the gasoline service station without variance of the Building Zone Resolution, by reason of the provisions of section 6 of said resolution.

After the issuance of such permits and the commencement of the use of the premises as a service station, the department of parks filed an appeal to the board of standards and appeals from the decision of the department of housing and buildings granting the permits. The board of standards and appeals adopted a report of its committee recommending that the certificate of occupancy and the permits issued in connection with the use of the premises as a gasoline service station be revoked. In doing so the members of the board expressed the view that the erection of the gasoline station as constructed involved a structural alteration to the premises, although there was no structural alteration of any building. Its decision was that the structural changes necessary to transform the premises formerly used as a stable to a complete unit as a gasoline service station were not permitted as of right under section 6 of the Building Zone Resolution. The board stated that it felt that it was required to so hold by reason of certain decisions of the courts which it deemed controlling. The present proceedings in the nature of a writ of certiorari were then instituted, whereupon Special Term annulled and set aside the decision of the board and reinstated the permits.

We think that the decision of the board of standards and appeals was correct and should have been confirmed. We base our holding, *first*, upon the ground that the alteration of the premises herein involved a structural alteration of the building found thereon, as well as of the whole premises; and, *second*, upon the ground that the change of use involved was not permitted under section 6 of the Building Zone Resolution, in view of the alterations made in the building and premises.

The language of section 6 of the Building Zone Resolution is quite involved. It reads as follows:

" § 6. Existing Buildings and Premises. (a) Any use existing in any building or premises on July 25, 1916, and not conforming to the regulations of the use district in which it is maintained, may be continued therein. No then existing building designed, arranged, intended or devoted to a use not permitted by this article in the district in which such use is located shall be enlarged, extended, reconstructed or structurally altered unless such use is changed to a use permitted in the district in which such building

is located. Such building may, however, be reconstructed or structurally altered to an extent not greater than 50 per cent. of the value of the building, exclusive of foundations, provided that no use in such building is changed or extended, except as authorized in paragraph b of this section, and provided further, that no use included in any one of the enumerated subdivisions of paragraph a of section 4 is changed into a use included in any other enumerated subdivision of paragraph a of section 4 or into a use prohibited by paragraph b of section 4, and also provided that no use prohibited by paragraph b of section 4 is changed into another use prohibited by paragraph b of section 4 or into a use included in an enumerated subdivision of paragraph a of section 4.

" (b) Any use existing in any building or premises on July 25, 1916, and not conforming to the regulations of the use district in which it is maintained may be changed, and such use may be extended throughout the building, provided that in either case:

" (1) No structural alterations shall be made in the building, except as authorized by paragraph a of this section, and  * * *

" (3) In a residence district no building or premises, unless devoted to one of the uses that is by section 4 prohibited in a business district, shall be changed to any of such uses, and

" (4) In a residence or business district no building or part thereof and no premises, unless devoted to one of the uses that is by paragraph a or b of section 4 prohibited in a business district, shall be changed to any of such uses.

" If a use is changed as authorized in this section, the new use may thereafter be changed, subject to the limitations imposed by subdivisions 1, 2, 3, and 4 of this paragraph."

References contained in section 6 to portions of section 4 require us to examine that section. The earlier section prescribes uses that are prohibited in buildings or premises in business districts. It contains three paragraphs or subdivisions, labeled " (a) " to " (c). " Subdivision " (a) " states forty-six specific uses so prohibited. Among these are stables, junk yards, and gasoline service stations. Subdivision " (b) " prohibits uses that may be obnoxious by reason of the emission of odor, dust, smoke, gas or noise. Subdivision " (c) " prohibits certain manufactory uses.

We have seen that section 6 is also divided into two parts labeled " (a) " and " (b). " Part " (a) " provides for the continuance of existing uses and sets forth the extent to which, in the event of structural alterations, a change may be made in non-conforming uses. Part " (b) " defines the instances in which non-conforming uses may be otherwise changed.

Petitioner contends that, under paragraph 3 of subdivision (b) of section 6 a change in use is permitted in a residence district where the change is from one non-conforming use prohibited by section 4 to another such use; and that under paragraph 4 of subdivision (b) of section 6 in a residence or business district use of a building, or part thereof, may be changed, provided the change is from one non-conforming use specified in subdivisions " (a) " or " (b) " of section 4 to another use. It contends that paragraphs 3 and 4 thus permit the change in use effected in this case, in view of the fact that no structural changes were made in the building remaining on the premises.

The appellants (board of standards and appeals) contend, on the other hand, that the change of use provided in subdivision (b) of section 6 is not permitted where any structural alterations are involved, where the change is from one non-conforming use specified in subdivisions " (a) " or " (b) " of section 4 to another non-conforming use as specified in said subdivisions.

It will thus be seen that both sides concede that if a structural alteration was made in the building found on the premises involved, section 6 would not permit the change in use proposed herein.

An analysis of section 6, as applied to the present case, shows that both uses maintained in the premises before July 25, 1916 (a stable and junk yard), could have been continued there despite the new zoning restrictions adopted on December 7, 1934. The section further provides, however, that if a building devoted to a non-conforming use is enlarged, extended, reconstructed or altered to an extent not greater than fifty per centum of its value, no change from one non-conforming use to another may take place, unless such change conformed to the requirements of subdivision " (b)" of section 6, with the further limitation that the reconstruction or alteration of the building involved may not be for the purpose of changing a non-conforming use listed in subdivisions " (a) " and " (b) " of section 4 to any other non-conforming use included in said subdivisions of section 4.

It is clear that a junk yard or a stable would be prohibited by subdivision " (a) " of section 4; therefore, section 6 would not allow the conversion of either of these pre-existing non-conforming uses into a gasoline service station, which is also prohibited by subdivision " (a) " of section 4, at least in any case where structural alterations took place in the buildings found on the premises. This is made plain not only by the language used in subdivision " (a)," but by reason of that found in subdivision " (b) " of section 6, paragraph 1, thereof which states that " No structural alterations shall be made in the building, except as authorized by paragraph a of this section."

Subdivision " (a) " of section 6 prohibits transformation in connection with an alteration from a junk yard or stable into a gasoline service station. Neither paragraph 3 nor 4 of subdivision " (b) " of section 6, therefore, permits the change in use involved herein, if any structural alterations were made in any building on the premises.

It is our view, therefore, that paragraphs 3 and 4 above referred to do not save the petitioner under the present circumstances, where there has been a complete alteration of the whole premises, including some structural alteration of the sole building remaining thereon. To hold that they did would be to ignore the limitation contained in paragraph 1 of subdivision (b) of section 6. Likewise, to hold that the extensive structural alterations which were made when the owner in the present case changed what remained of the stable and the junk yard into a modern gasoline service station, were not structural alterations within the meaning of section 6, would be to ignore actualities and to defeat the spirit, as well as the letter, of the Zoning Resolution. It is plain that these whole premises were completely made over in connection with the present change of use. In connection with this change there was a material alteration at least in the outside of the only building found on the plot, which, taken in connection with the other changes made on the premises, must be held to be a structural alteration of said building as that term is used in the statute. Stuccoing a building might not be considered a structural alteration under other circumstances, but stuccoing a building as part of a complete transformation of premises to provide for a complete change of use should be so considered, especially where the right is reserved to change the interior of the building.

We need not determine whether, under section 6, a change may be made from one non-conforming use to another in connection with which change there is no structural alteration in any respect to any existing building as part of the alteration of the whole premises. Nor do we decide whether paragraphs 3 and 4 of section 6 permit a change from one non-conforming use to another such use not listed in subdivisions " (a) " or " (b) " of section 4, for example: A change from a manufacturing use dealt with in section 4, subdivision (c), to another similar non-conforming use. If we were to construe section 6 to permit transformation in restricted areas of pre-existing non-conforming uses into other new businesses prohibited in subdivisions " (a) " and " (b) " of section 4, it would mean that these uses which are prohibited because of offensiveness, unsightliness, or some other element of nuisance, might be permitted in a business or even in a residence area whenever structural alterations took place there, merely because some other

non-conforming use not so offensive had existed on said premises prior to the adoption of the Zoning Resolution. To do this would defeat the object of this statute, and, in addition, it would render inconsistent the various provisions found in section 6. We think that the language of the section may be reconciled by construing it in the manner herein indicated, and at the same time the object of the law preserved. In so construing the section, we do no violence to the language used.

In *Matter of Kaltenbach* v. *Board of Standards and Appeals* (274 N. Y. 34) the issue was presented as to whether a change might be made from a monument works (a non-conforming use) to a gasoline service station. The record disclosed that the monument works had occupied the whole of the premises involved and that a portion thereof facing the highway was altered into a gasoline service station. The remainder of the premises continued as a monument works. The Court of Appeals held that section 6 of the Building Zone Resolution did not authorize such a change, and that the installation of the gasoline service station involved a structural alteration in the premises. The court there said: " The structure described as an ' office building ' and the four-car garage were erected on these premises which constitute one plot in a single ownership (*Beekwill Realty Corp.* v. *City of New York*, 254 N. Y. 423, 427) and where the monument business is continued. That these buildings were arranged, intended and designed to be used for a gasoline service station clearly appears not only from the photographs in evidence and the testimony of witnesses but most emphatically from the report of the committee of the Board of Standards and Appeals which inspected the premises. * * * Since the gasoline pumps and tanks, the garage and the office building constitute a single structural unit which was erected in violation of section 4 (a) of the Building Zone Resolution, the principle announced in *City of Buffalo* v. *Chadeayne* (134 N. Y. 163) does not apply. * * * "

The effect of the decision in the *Kaltenbach* case (*supra*) is to hold that the saving provisions of paragraph 4 of subdivision (b) of section 6, in a residence or business district, did not permit a change from one non-conforming use to another, although in that case there were no existing buildings on the portion of the premises for which the change was sought. The court, in effect, stated that the erection of the office building and the four-car garage, together with the alterations of the remainder of the premises by the installation of gas pumps and driveways as part of a single unit, was not permitted under paragraph 4 of subdivision (b) of section 6, and that the erection of such a unit was in violation of section 4, subdivision

(a), of the Building Zone Resolution although both uses involved were non-conforming. It is true that in the *Kaltenbach* case (*supra*) the attempt was merely to change the use of part of the premises, and that if the change had been permitted in that case there would have been two non-conforming uses where only one previously existed. We do not find that this circumstance affects the principle applied in determining what was a structural alteration. The important feature of this decision is that it took into consideration the entire structural change intended to be effected in determining whether a structural alteration within the meaning of section 6 was being attempted.

The board of standards and appeals, in determining the present case, stated that they felt they were controlled by the decision of the Court of Appeals in *Matter of Fortuna* v. *Murdock* (257 App. Div. 993; affd. without opinion, 281 N. Y. 763). While the facts in the *Fortuna* case (*supra*) are quite similar to those involved in the present case, we do not think that the case is decisive of the question now presented for the reason that the decision rested on a different principle of law, as we will point out. In the *Fortuna* case, as in the present case, the premises had been used prior to 1916 as a stable. The owner wished to change this non-conforming use into a gasoline service station. However, as he did not wish to use the stable as the office building for the gasoline service station, he filed a petition for a variance under section 21 of the Building Zone Resolution, contending that it would be a hardship for him to carry on the business of a gasoline service station in a horse stable. It was plain that the structural transformation proposed involved the demolition of certain structures and the erection of a new building. It also involved the sinking of tanks under the ground and the installation of gasoline pumps. The board of standards and appeals allowed the variance upon the ground that, as the owner was permitted to continue the use of a stable, which use could not be disallowed, he should be permitted to make structural alterations to build an attractive gasoline station, rather than to permit him to create a gasoline service station without structural alterations. The Appellate Division held that the board of standards and appeals had no authority to grant the variance described, stating that there were no practical difficulties or unnecessary hardships in the way of carrying out the letter of the Zoning Resolution. The Court of Appeals affirmed that determination, without opinion. We think that the *Fortuna* case (*supra*) stands for no more than a decision that hardship cannot be based upon the necessity of maintaining the *status quo* with respect to the structural condition of the premises.

The petitioner herein contends that the demolition of the three buildings taken down as the result of the condemnation and fire could not be deemed a part of a structural alteration, because there was no voluntary act on the part of the petitioner which brought about this demolition. We think that, to the extent that the demolition was done by the park department because of the appearance of the remaining portions of the structure after the condemnation, it must be deemed to have been done on behalf of the petitioner. This circumstance and that relating to the fire which destroyed part of another structure so that the remainder thereof had to be demolished did not materially alter the case. If these portions of structures found on the premises were demolished in connection with a contemplated change of use, it is plain that they would be considered part of the structural alterations. We think that the board had the right to consider the recent demolition of these buildings in connection with its determination as to whether any structural alteration had been made in the premises.

The board found that at the present time the interior of the building remaining on the premises had not been altered, but that the exterior had been stuccoed but not otherwise changed. The board also found the gasoline station as constructed involved structural work as to the gasoline storage tanks and the erection of pumps, as well as curb cuts and repaving, even though there may have been no structural alterations to a building.

We deem that a proper finding upon the undisputed facts would have been that the changes made in the remaining building, considered in the light of the general alteration of the premises, constituted a structural alteration of that building as well as of the premises.

The order appealed from should be reversed, with twenty dollars costs and disbursements, and the determination of the board of standards and appeals reinstated.

MARTIN, P. J., GLENNON, UNTERMYER and DORE, JJ., concur.

Order unanimously reversed, with twenty dollars costs and disbursements, and the determination of the board of standards and appeals reinstated.