# Davis Appeal.

Argued April 11, 1951. Before STERN, STEARNE, JONES, BELL and LADNER, JJ.

*Clyde W. Teel*, with him *Walter R. Rodgers, 3rd.*, and *Fackenthal, Teel & Danser*, for appellants.

*George F. Coffin* and *Edward J. Fox, Jr.*, with them *Fox & Oldt*, for appellees.

OPINION BY MR. JUSTICE HORACE STERN, May 21, 1951:

Where the maintenance of a multiple family dwelling —in other words an apartment house—was a nonconforming use in a single family district under the provisions of a zoning ordinance, but was in existence at the time of the enactment of the ordinance, may it subsequently increase the number of its apartments? This is the sole question involved in these proceedings.

No. 501 Paxinosa Avenue, in Easton, is a lot 100 feet in front and 130 feet in depth and on it is erected a large dwelling house. At the time of the adoption by the City

of Easton of a zoning ordinance this house was divided as follows: a duplex apartment occupying part of the first floor and part of the second floor, a first floor apartment, a second floor apartment, and a third floor suite which had been occupied from time to time by servants of the owner. It was therefore used as a residence by three families (exclusive of the use of the third floor).

On February 23, 1935 Easton adopted an ordinance in which these premises fell into an "A" residence district in which were permitted only one-family and two-family dwellings, as against multiple dwellings which were defined as dwellings designed or occupied otherwise than as a one-family or a two-family dwelling, and as including apartment houses and all other family dwellings of similar character. However, the ordinance provided (Article IV, section 18 (b)) that "The lawful use of a building or structure, existing at the time of the adoption of this ordinance, . . . although such use does not conform to the provisions hereof, may be continued and such use may be extended throughout the building; provided no structural alterations are made, . . . ." There was also a provision (Article IX, section 37(e)) that a Certificate of Occupancy should be issued for the purpose of maintaining, changing or extending a nonconforming use existing at the time of the passage of the ordinance, and that the Administrative Officer should mail such certificate to the occupants or owners of all such property within 90 days after the passage of the ordinance. It seems that the Administrative Officer failed to do this as to the property here in question.

Some time between 1936 and 1939 the first floor apartment of the house was divided into two separate apartments. This was accomplished merely by means of partitioning and did not involve any structural alterations, which were defined in the ordinance as changes "in the supporting members of a building or structure,

such as bearing wall, columns, beams or girders." The property thus became a four-family dwelling (exclusive of the third floor space).

On April 11, 1949, the ordinance of 1935 was repealed by a new zoning ordinance substantially similar, however, to the preceding one. It limited dwellings in an "A" residence district to one-family dwellings. It defined multiple family dwellings as structures designed to be used or occupied as a residence by three or more families. It contained (Article IV, section 25 (b)) the same provision in regard to the continuance and extension of nonconforming uses as that in Article IV, section 18 (b) of the ordinance of 1935, and also the same provision (Article IX, section 46(f)) concerning the issue of a Certificate of Occupancy for the purpose of maintaining, changing or extending a nonconforming use existing at the time of the passage of the ordinance as that in Article IX, section 37(e) of the prior ordinance.

The owners of 501 Paxinosa Avenue, Frank L. and Doris L. Davis, applied in September, 1949, to the Zoning Administrator for a Certificate of Occupancy for four apartments in the property under Article IX, section 46(f) of the new ordinance, that being the number of apartments they stated were then in use for family dwelling purposes. The application was refused but an offer was made to issue a certificate for three apartments which was the number in use at the time of the adoption of the ordinance of 1935. This decision was reversed, on appeal, by the Zoning Board of Appeals, which ordered a certificate to issue as prayed for. Several neighboring property owners, and also the City of Easton, appealed to the Court of Common Pleas of Northampton County, which reversed, in turn, the action of the Zoning Board of Appeals. The applicants, Mr. and Mrs. Davis, now appeal to this Court.

The controlling question resolves itself into this: Was it lawful for the owners of this house to put in a fourth apartment after 1935? If so, under Article IV, section 25(b) of the ordinance of 1949, such lawful, although nonconforming, use in existence at the time of the enactment of that ordinance could be continued, and the owners were entitled accordingly to the Certificate of Occupancy they requested. The maintenance of three apartments in 1935, making the property a multiple family dwelling, was then a nonconforming use, but as such was permitted by the ordinance of that year. Could such use be subsequently lawfully enlarged? Several of the decisions of this Court are precedents which, at least by analogy, compel an affirmative answer to that question. In *Gilfillan's Permit,* 291 Pa. 358, 362, 140 A. 136, 137, 138, it was said: "Petitioner's business had been established at its present location long before the passing of the zoning ordinance and was actively conducted at the time the ordinance went into effect; accordingly, as the property was then used for lawful purposes, the city was without power to compel a change in the nature of the use, or prevent the owner from making such necessary additions to the existing structure as were needed to provide for its natural expansion and the accommodation of increased trade, so long as such additions would not be detrimental to the public welfare, safety and health." In *Haller Baking Co.'s Appeal,* 295 Pa. 257, 261, 262, 145 A. 77, 79, it was said: "The [zoning] ordinance is not so restrictive, nor does it impose such qualifying language. The section of nonconforming uses employs the phrases, 'the lawful use of land existing at the time of the adoption of this ordinance,' 'the lawful use of a building,' etc. Neither the extent, quantity nor quality of the use is mentioned, but only that it must exist. Neither the act, the ordinance nor the law generally requires the court to speculate as to the number of acts or business transactions necessary

to constitute an existing use. . . . The use for which the property is adapted need not be in actual operation at the time of the adoption of the ordinance, if the attending circumstances connected with the property bear out the conclusion that the owner intended to use the property for that purpose." In *Cheswick Borough v. Bechman,* 352 Pa. 79, 82, 42 A. 2d 60, 62, it was said: "The prohibition of the [zoning] Ordinance is directed to new uses; it imposes no restraint upon broadening the scope of the existing use. 'Neither the extent, quantity nor quality of the use is mentioned, but only that it must exist': Haller Baking Company's Appeal, supra, 261. The business carried on was the excavation of loam and sand loam. It is not essential that the use, as exercised at the time the Ordinance was enacted, should have utilized the entire tract. To so hold would deprive appellees of the use of their property as effectively as if the ordinance had been completely prohibitive of all use. This result could not have been intended." In *Humphreys v. Stuart Realty Corporation,* 364 Pa. 616, 621, 73 A. 2d 407, 409, it was said: "In considering the question thus presented two applicable principles must be borne in mind. The one is that a nonconforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; it may be increased in extent by natural expansion and growth of trade, neither is it essential that its exercise at the time the ordinance was enacted should have utilized the entire tract upon which the business was being conducted." And finally, in *Firth v. Scherzberg,* 366 Pa. 443, 449, 77 A. 2d 443, 446, it was said: "Neither the natural growth of a business, existing at the time of the enactment of a zoning ordinance, nor the adoption thereafter of more modern instrumentalities, suitable and helpful in carrying on the business, works a change of use in legal contemplation."

346

The owners of 501 Paxinosa Avenue were, in a sense, in the business of maintaining and operating an apartment house, albeit on a moderate scale. Their multiple dwelling house was a nonconforming use when the ordinance of 1935 was enacted and also when the ordinance of 1949 was enacted. They had three families in their property in 1935, which was in excess of the maximum number prescribed by the ordinance of that year. They were not strait-jacketed, however, by restriction to that number of tenants. Once lawfully established as a nonconforming use they could enlarge that use "by natural expansion." This did not constitute a new or different use but an increase of the existing use as a multiple dwelling house. Could it be argued that if, for example, the operation of a hotel constituted a nonconforming use under the terms of a zoning ordinance, and if at the time of the enactment of the ordinance it had a certain number of guest rooms, it could not subsequently legitimately increase the number by a process of subdivision? It is clear that, when the ordinance of 1949 was enacted, appellants were lawfully using their property to accommodate four families, and were therefore, under its terms, entitled to a Certificate of Occupancy accordingly.

Order reversed, with direction to the Zoning Administrator to issue the Certificate of Occupancy prayed for.