Hanna *v.* Board of Adjustment.

Argued March 14, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Warren S. Reding,* with him *Reding, Blackstone & Sell,* for appellant.

*Walter M. Newman,* with him *Ryan, Newman, Geer & Goldring,* for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, July 31, 1962:

This is an appeal from an order of the County Court of Allegheny County which reversed an order of the Board of Adjustment [Board] of the Borough of Forest Hills [Borough] affirming the refusal of a permit for the erection of a gasoline service station.

John Hanna and Florence M. Hanna, his wife, [Hannas] in 1954 purchased a lot, improved with a frame dwelling house and a detached frame garage, located at the southeastern corner of Filmore Road and Greensburg Pike in Forest Hills Borough. At that time this lot was in a zoning district classified under the Borough zoning ordinance as "Z-1 Commercial" and from that time until February 10, 1958 Hannas occupied the frame dwelling as a residence. On Feb-

ruary 10, 1958, Hannas began a used car business on their land maintaining a business office for that purpose in part of the frame dwelling. On or about March 1, 1958 the used car sales office was moved from the frame dwelling to the garage and on or about March 1, 1959 Hannas leased the dwelling house as a residence but continued to use the garage and lot for the used car business.

On February 12, 1958, the Borough amended its zoning ordinance and changed the zone classification in the district wherein Hannas' property was located from Z-1 Commercial to Z-2 Class A Residential. On October 23, 1958, Hannas were arrested and charged with a violation of the zoning ordinance for maintaining an office and for engaging in the used car business in the newly classified district but this charge was dismissed by the Burgess of the Borough on the ground that the Borough had failed to establish that Hannas had begun the used car business subsequent to February 12, 1958, the date upon which the ordinance was amended. From February 10, 1958 until the time of the present appeal Hannas have continued to conduct a used car sales business upon the premises.

On January 12, 1960, Hannas gave an option to Socony-Mobil Oil Company [Socony] to purchase the property for use as a gasoline service station and on August 4, 1960 Socony exercised its option. On August 29, 1960, Hannas and Socony appealed to the Borough building committee for a permit to build and conduct a gasoline service station on the premises. The plans for the proposed construction provided for the demolition of both the present frame dwelling and garage and the erection of a gasoline service station type building with appurtenant equipment such as tanks and pumps.*

---

* These plans of course, would eliminate the dwelling house, thus ending *any* use of *any* part of the premises for residence purposes.

The building committee refused to issue a permit whereupon Hannas and Socony appealed to the Board. The Board, after hearing, affirmed the building committee's action upon the ground that approval of the application would violate Sections 10(a), (b), (c) of the zoning ordinance. On appeal the County Court reversed the Board and from its order this appeal was taken.

The pertinent provisions of the zoning ordinance are: "Section 10. NON-CONFORMING USES. (a) The lawful use of land existing at the time of the adoption of this ordinance, although such use does not conform to the provisions hereof, may be continued; but if such non-conforming use is discontinued, any future use of said land shall be in conformity with the provisions of this ordinance. (b) The lawful use of a building existing at the time of the adoption of this ordinance may be continued, although such use does not conform to the provisions hereof, and such use may be extended throughout the building, provided no structural alterations are made other than those ordered by an authorized public officer to assure the safety of the building or structure, and provided further, that such extension does not displace any residence use in a Residence District. If no structural alterations are made, a non-conforming use of a building may be changed to another non-conforming use of the same or higher classification. (c) Whenever a use District shall be hereafter changed, any then existing non-conforming use in such changed district may be continued or changed to another non-conforming use of the same or higher classification, provided no structural alterations are made other than those ordered by an authorized public officer to assu[r]e safety of the building or structure."

An analysis of Section 10(a) indicates that a non-conforming use of the *land* may continue until a discontinuance (that is, an abandonment) of such use

takes place. Under Section 10(b), a nonconforming use of a *building* on the land may continue and such use may be *extended throughout* such building provided (a) no structural alterations (other than ordered by an authorized public officer for the building's safety)[1] be made and (b) that the *extension* of such use does not displace a residence used in a residence district. Section 10(b) also provides that the nonconforming use of a *building* may be changed to another nonconforming use of the same or a higher classification *if no structural alterations are made*. In our view, Sections 10(a) and 10(b), except as they may throw some light on the construction of Section 10(c), are not applicable in the instant factual situation.

Section 10(c) controls the factual situation presented in the case at bar because the use district has been changed from commercial to residential. Section 10(c) provides that, where the use district has been changed, the nonconforming use may either *continue* or *be changed* to another nonconforming use of the same or a higher classification[2] provided no structural alterations be made other than ordered by an authorized public officer for the building's safety.

What Socony contemplates is a complete *demolition* of the two *existing buildings* on this land and the *erection* of a gasoline station with the appurtenant tanks and pumps. Our initial inquiry must be to determine whether Sections 10(c) permits such a change.

A "structural alteration" is a change in an *existing* building which constitutes such a change or changes in

---

[1] In the case at bar no authorized public officer has ordered any structural alterations to the existing buildings for their safety.

[2] For the purpose of this appeal we take the position that the contemplated change in the use of this property from a used car business to a gasoline service station will *upgrade*, not *downgrade*, the property: *Suhy v. Zoning Board of Adjustment*, 402 Pa. 657, 169 A. 2d 62.

an old building as converts the existing building into a new or substantially different structure: *Cole v. City of Battle Creek,* 298 Mich. 98, 298 N.W. 466; *Paye v. City of Grosse Pointe,* 279 Mich. 254, 271 N.W. 826; *A. L. Carrithers & Son v. City of Louisville,* 250 Ky. 462, 63 S.W. 2d 493; *Goodrich v. Selligman,* 298 Ky. 863, 183 S.W. 2d 625; *440 East 102nd Street Corporation v. Murdock,* 23 N.Y.S. 2d 347, 260 App. Div. 604; *Hawkeye Cas. Co. v. Frazier,* 183 F. 2d 465.

If, under Section 10(c), for the purpose of effecting a new use of the same or a higher classification an *existing* building cannot be altered (except as ordered by an authorized public officer for the building's safety), a fortiori a *new* building cannot be erected. The prohibition of the erection of a *new* building is inherent and implicit in the provisions of Section 10(c). Other jurisdictions have reached the same result in the construction of zoning ordinances containing language similar to that in Section 10(c); *Rehfeld v. City and County of San Francisco,* 218 Cal. 83, 21 P. 2d 419; *San Diego County v. McClurken,* 37 Cal. 2d 683, 234 P. 2d 972; *Piccolo v. Town of West Haven,* 120 Conn. 449, 181 A. 615; *Goodrich v. Selligman,* supra; *Colati v. Jirout,* 186 Md. 652, 47 A. 2d 613; *DeVito v. Pearsall,* 115 N.J.L. 323, 180 A. 202; *Cole v. City of Battle Creek,* supra; *State ex rel. Miller v. Cain,* 40 Wash. 2d 216, 242 P. 2d 505; *Inspector of Buildings of Burlington v. Murphy,* 320 Mass. 207, 68 N.E. 2d 918; *Wilbur v. Newton,* 302 Mass. 38, 18 N.E. 2d 365; *Gore v. City of Carlinville,* 9 Ill. 2d 296, 137 N.E. 2d 368; *City of New Orleans v. Langenstein,* 227 La. 770, 111 So. 2d 363;[3] *Philadelphia*

---

[3] In *Cole v. City of Battle Creek,* supra (p. 468), the Court stated: "The language of this paragraph [very similar to the language of Section 10(c)], requires the conclusion that the structural alterations permitted are limited to those made in existing buildings." There is no language which permits the erection of new

*Art Alliance v. Philadelphia Zoning Board of Adjustment*, 377 Pa. 144, 104 A. 2d 492; *Peirce Appeal*, 384 Pa. 100, 119 A. 2d 506; *Davis Appeal*, 367 Pa. 340, 80 A. 2d 789.[4] The ordinance does prohibit, certainly by implication, a change of a nonconforming use to a new nonconforming use of the same or a higher classification if structural alterations are to be made and such prohibition excludes the erection of a new building such as Socony contemplates.

Section 10(c), so construed, requires that we next inquire as to the validity of that section. A basic purpose of zoning is to ensure an orderly physical development of the city, borough, township or other community by confining particular uses of property to certain defined areas. With such a purpose nonconforming uses are inconsistent. *Molnar v. G. B. Henne & Co., Inc.*, 377 Pa. 571, 581, 105 A. 2d 325. The continuance of nonconforming uses under zoning ordinances is countenanced because it avoids the imposition of a hardship upon the property owner and because the refusal of the continuance of a nonconforming use would be of doubtful constitutionality. Even though zoning ordinances permit the continuance of nonconforming uses, it is the policy of the law to closely restrict such nonconforming uses and to strictly construe provisions in zoning ordinances which provide for the continuance of nonconforming uses. Nonconforming uses, inconsistent with a basic purpose of zoning, represent conditions which should be reduced to conformity as speedily as is compatible with the law

---

nonconforming buildings or additions to existing nonconforming buildings.

[4] In *Peirce* and *Davis*, supra, the language of the ordinances involved were very similar to the language of the instant ordinance as to nonconforming uses. In *Pierce* the validity of the ordinance was not raised; in *Davis* the validity of the ordinance was raised but not passed upon.

and the Constitution. The fact that a new contemplated nonconforming use of the property is no more detrimental or less objectionable than the existing use is of no consequence: *Williams Appeal,* 174 Pa. Superior Ct. 570, 580, 102 A. 2d 186.

In considering the plans for the new use of this property as a gasoline service station, the court below stated: "It might well be noted that the structures, the tanks, pumps, and, as the plans show, a new office need not necessarily be called buildings." With that conclusion we disagree. While the "tanks" and "pumps" are not "buildings" within the sense of the ordinance (*Humphreys v. Stuart Realty Corp.,* 364 Pa. 616, 620, 73 A. 2d 407), the contemplated gasoline service *station* is clearly a "building"; to hold otherwise is to torture the language of the ordinance. Socony contemplates not the extension of a nonconforming use but a completely new use of the property for the accomplishment of which a new building is to be erected.

This ordinance does not prohibit the expansion or broadening of the scope of the present use: *Cheswick Borough v. Bechman,* 352 Pa. 79, 82, 42 A. 2d 60; *Humphreys v. Stuart Realty Corp.,* supra; *Firth v. Scherzberg,* 366 Pa. 443, 77 A. 2d 443; *Kellman v. McShain,* 369 Pa. 14, 85 A. 2d 32.

The use of the property which the ordinance protects, or "freezes", is the use which was in existence at the time of the passage of the ordinance or the change of a use district (*Upper Darby Township Appeal,* 391 Pa. 347, 138 A. 2d 99; *Lance Appeal,* 399 Pa. 311, 159 A. 2d 715) but it offers no protection to a use *different* from the use in existence when the ordinance was passed. The latter does not render the ordinance invalid. The nonconforming use which is within the orbit of protection of the law and the Constitution is the nonconforming use which exists at the time of the passage of the zoning ordinance or the change in a use

district under a zoning ordinance, not a *new* or *different* nonconforming use. Section 10(c) of the instant ordinance which restricts and limits the change of use from an existing to a new and different use is valid.

To permit the use of this property as a gasoline service station, a vastly *different* use for the accomplishment of which the existing buildings would be demolished and a new building erected, is a clear violation of Section 10(c) of this ordinance. The grant of such permission could mean an almost indefinite continuance of a nonconforming use by periodical rebuilding of structures on the land which would be at complete variance with the spirit of a zoning ordinance, i.e., the gradual elimination of nonconforming use.[5] In upholding the refusal of the building committee to grant this permit to Hannas and Socony, the Board was clearly correct; in reversing the Board, the court below was in error.

Order reversed. Costs on Hannas and Socony.

---

[5] Persistent discordant uses should be reduced to conformity as speedily as justice will permit: *Hay v. Board of Adjustment,* 37 N.J. Super. 461, 117 A. 2d 650.