## Strauser v. West Goshen Township Zoning Hearing Board

*Ralph W. Kent,* for plaintiff.
*Lawrence E. Wood,* for defendant.

KURTZ, J., July 11, 1970.—The property owner has appealed from an adverse ruling of the Zoning Hearing Board of West Goshen Township refusing her application for a special exception and/or variance by which she sought to obtain permission to erect a neighborhood retail food store on the tract in ques-

tion, which is situated on the north side of Route 3, the Philadelphia Pike, in said township.

The tract is located in a C-4 commercial zone under the terms of the zoning ordinance of the township. It has a frontage on Route 3 of 150 feet and a depth of about 370 feet. It contains 55,500 square feet of land.

When the zoning ordinance was adopted on October 4, 1967, the tract had a dwelling house located upon it in which its then owner lived. To the rear of that structure there was another smaller building in which the owner lettered and sold cemetery memorials and monuments. Samples of the items offered for sale were exhibited around the outside of the buildings just described.

That use of the property was discontinued in October or November of 1968. This appellant acquired title to the tract on November 8, 1968. She made her application to the township zoning officer in August of 1969.

Pertinent provisions of the ordinance are as follows:

"In any C-4 Commercial District the following regulations shall apply:

"304.1 *Use Regulations*. A building may be erected, altered or used, and a lot or premises may be used for any of the following purposes and for no other:

"1. Offices.

"2. Laboratory or research facilities.

"3. Wholesale sales, storage, or distribution.

"4. Church.

"5. School.

"6. Convalescent or nursing homes.

"7. Hospitals, medical clinics.

"8. Club or lodge.

"9. Garden type apartments.

"10. Eating establishments with inside service and seating only.

"11. Motel.

"12. Customary accessory uses associated with commercial districts.

"304.2 *Area and Bulk Regulations.* The following area and bulk regulations shall apply:

"*Lot size*—4 acres minimum.

"*Lot Width*—400 feet minimum at building line.

"*Lot Coverage*—20% maximum.

"*Building Setback Line*—100 feet minimum for any building or parking area.

"*Side Yards*—50 feet minimum for each.

"*Rear Yard*—100 feet minimum.

"In any C-5 Commercial District, the following regulations shall apply:

"305.1 *Use Regulations.* A building may be erected, altered, or used, and a lot or premises may be used for any of the following purposes and for no other:

"1. Retail sale of dry goods, variety and general merchandise, clothing, food, flowers, beverages, drugs, household supplies or furnishings, sale or repair of jewelry, watches and clocks, optical goods, or musical, professional, or scientific instruments.

". . .

"12. The following uses shall be permitted as a special exception when authorized by the Board of Adjustment subject to Article 800 of this Ordinance. The *Area and Bulk Regulations,* Subsection 305.2 of this Article, and *Design* Standards, Subsection 305.3 of this Article, shall apply to ALL uses permitted by special exception in the C-5 General Highway Commercial District.

"a.   Wholesale sales, storage or distribution.

"b.   Gasoline service station.

"c.   Car wash.

"d.   *Monument sales.* (Italics supplied.)

"305.2 *Area and Bulk Regulations.* The following area and bulk regulations shall apply:

"*Lot Size*—40,000 sq. ft. minimum for gasoline service stations, used car lots, supermarkets, and car washes; 20,000 sq. ft. minimum for all other uses.

"*Lot Width*—200 feet minimum for gasoline service stations, used car lots, supermarkets, and car washes; 100 feet minimum on non-corner lots for all other uses; 125 feet minimum on corner lots for all other uses.

"*Lot Coverage*—20% maximum for gasoline service stations; 40% maximum on non-corner lots for all other uses; 30% maximum on corner lots for all other uses.

"*Floor Area Ratio*—.80 maximum

"*Building Setback Line*—40 feet minimum

"*Setback for Gasoline Pumps, Outdoor Displays or Parking Facilities*—30 feet minimum

"*Side Yards*—15 feet minimum each side

"*Rear Yard*—50 feet minimum

"*Maximum Building Height*—2 stories, not to exceed 40 feet

"*Paved Surface Area*—may not exceed 50% of total lot

"601.1 *Continuation*

"The lawful use of a building or land existing on the effective date of this Ordinance, or authorized by a building permit issued prior thereto, may be continued, although such use does not conform with the provisions of this Ordinance.

"601.3 *Changes*

"A nonconforming use of a building or land may be changed to a nonconforming use of the same or a more restricted classification, if no structural alterations are made therein, provided that such change may include structural alteration when authorized as a special exception. Whenever a nonconforming use of a building or land has been changed to a use of a more restricted classification, or to a conforming

use, such use shall not thereafter be changed to a use of a less restricted classification.

"601.5 *Discontinuance*

"If a nonconforming use of land or of a building ceases or is discontinued for a continuous period of one year, or more, subsequent use of such building or land shall be in conformity with the provisions of this Ordinance, unless the Board of Adjustment shall authorize as a special exception the resumption of the discontinued use.

"602.1 *Lots Nonconforming as to Area and Width Regulations*

"A building may be erected or altered on any lot held at the effective date of this Ordinance in single and separate ownership which is not of the required minimum area, or width, or is of such unusual dimensions that the owner would have difficulty in providing the required open spaces for the district in which such lot is situated, provided a special exception is authorized by the Board of Adjustment, and provided further that the applicant does not own or control other adjoining property sufficient to enable him to comply with the provisions of this Ordinance as amended."

Legal principles which have application to the case at hand have been set forth by the Supreme Court in the case of Hanna v. Board of Adjustment, 408 Pa. 306, 312, 313 (1962), as follows:

"A basic purpose of zoning is to ensure an orderly physical development of the city, borough, township or other community by confining particular uses of property to certain defined areas. With such a purpose nonconforming uses are inconsistent: Molnar v. G. B. Henne & Co., Inc., 377 Pa. 571, 581, 105 A. 2d 325. The continuance of nonconforming uses under zoning ordinances is countenanced because it avoids the imposition of a hardship upon the property owner

and because the refusal of the continuance of a nonconforming use would be of doubtful constitutionality. Even though zoning ordinances permit the continuance of nonconforming uses, it is the policy of the law to closely restrict such nonconforming uses and to strictly construe provisions in zoning ordinances which provide for the continuance of nonconforming uses. Nonconforming uses, inconsistent with a basic purpose of zoning, represent conditions which should be reduced to conformity as speedily as is compatible with the law and the Constitution. The fact that a new contemplated nonconforming use of the property is no more detrimental or less objectionable than the existing use is of no consequence: Williams Appeal, 174 Pa. Superior Ct. 570, 580, 102 A. 2d 186."

This ordinance does not contain the provisions of some others which we have studied which permit fewer uses in the more restricted zones and those and other uses in addition thereto as the use regulations in each successive district become more liberal. On the contrary, it undertakes to specify precisely the particular uses to which property may be put in each zone it creates, and sets forth in detail the conditions and regulations which apply in each district. For that reason, the classification of uses from the point of view of their being more or less restricted is not clearly defined. Each of the permitted uses in any given zone would seem to be classified as being on a par in that regard with any other.

Monument sales and the retail sale of food are both permitted uses in a C-5 zone under the terms of this ordinance. Having been bracketed in that fashion, each would appear to be of the same classification insofar as their being more or less restricted is concerned. Being so classified, a retail food establishment may be permitted in substitution of a place where monuments were sold. The reverse of that situation

would also be true. Under section 601.3, such a substitution is permitted unless there is some other provision of the enactment which requires a contrary result. We do not believe that that is the case.

That section further provides that when a change of nonconforming uses is permitted, such change shall be authorized by special exception if structural alterations of a building are included within the change. It is in this regard that the instant case may be distinguished from Hanna, cited above.

A petitioner who seeks a special exception need only show that the proposed use is allowable under the terms of the ordinance. Having done that, the burden of establishing that such use would be detrimental to the health, safety and morals of the community is upon those who oppose its issuance: Temple University v. Zoning Board of Adjustment, 414 Pa. 191, 195 (1964). We have already indicated that the use proposed in this case is a permitted use. There is no competent proof upon the record from which we can find that health, safety and morals will be adversely affected if the permission here sought is granted.

Section 304.2, relating to C-4 districts, requires a minimum lot size of four acres. The size of the lot here under consideration is about one and one-quarter acres. The appellant has indicated that although she cannot meet the four-acre requirement, she will meet the setback and side and rear yard requirements as the ordinance provides.

Should the permit be granted in spite of this deficiency in lot area? Section 602.1 provides that a building on a lot which does not conform in this regard may be altered and a building may be erected on such a lot if a special exception permitting such alteration or erection is first obtained. Here again, the principles which apply to the granting of special ex-

ceptions must be considered. Since this applicant has shown that the use proposed is allowable as the ordinance provides, and because no competent evidence has been presented which indicates that health, safety or morals will be adversely affected by permitting that use, permission to erect and operate a neighborhood retail grocery should be granted. In these circumstances, and after giving full consideration to the principles enunciated in Hanna, supra, we can find no reason for a refusal of the application.

## CONCLUSIONS OF LAW

1. The nonconforming use of the prior owner of the tract here under consideration had not been discontinued for a continuous period of one year prior to the time the present appellant applied for a permit to use said tract as a neighborhood retail grocery store.

2. Appellant is entitled as a special exception to the provisions of the township zoning ordinance to erect on said tract a one-story building, and thereafter to use said tract as a neighborhood retail grocery store.

3. The decision of the zoning hearing board of said township sustaining the refusal of the township zoning officer to issue a permit authorizing said use of the tract here in question constituted an error of law on the part of that board.

4. Nothing herein contained shall be construed so as to permit appellant to use said tract in the manner indicated in violation of the setback and side and rear yard provisions of the zoning ordinance.

5. The decision of the Zoning Hearing Board of West Goshen Township should be reversed.

## ORDER

And now, July 10, 1970, the decision of the Zoning Hearing Board of West Goshen Township entered in said cause under date of November 27, 1969, is hereby reversed.