564 A.2d 1324

**Richard C. HAMMOND, Appellant,**

**v.**

**The ZONING HEARING BOARD OF the BOROUGH OF STROUDSBURG, Appellee.**

Commonwealth Court of Pennsylvania.

Argued June 5, 1989.

Decided Sept. 19, 1989.

Robert M. Maskrey, Jr., Robinson, Hoffner & Billick, Stroudsburg, for appellant.

Elizabeth Bensinger–Weekes, Bensinger, Flynn & Weekes, P.A., Stroudsburg, for appellee.

Before CRUMLISH, Jr., President Judge, and CRAIG (P.) and COLINS, JJ.*

CRAIG, Judge.

Richard C. Hammond appeals from an order of Judge Peter J. O'Brien of the Court of Common Pleas of Monroe County that affirmed the order of the Zoning Hearing Board of the Borough of Stroudsburg denying Hammond's application for a special exception to change from one nonconforming use to another.

The issues as framed by Hammond are (1) procedurally, whether the application should be deemed approved under the provisions of section 908(9) of the Pennsylvania Municipalities Planning Code (MPC),[1] where the board issued a written decision containing findings of fact and conclusions of law outside a period of forty-five days from the public hearing on the application, but the board sent Hammond written notice of its decision well within that period, and (2) substantively, whether substantial evidence supported the board's findings that Hammond had failed to show (a) that the change in use would not increase vehicular or pedestri-

* This matter was argued before a panel consisting of Judge CRAIG, Judge COLINS and Senior Judge KALISH. Due to the untimely death of Senior Judge KALISH, the case was submitted on the briefs to President Judge CRUMLISH, Jr., for his consideration as a member of the panel.

1. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10908(9).

an traffic and (b) that the property could not reasonably be changed to a conforming use.

Hammond owns property in Stroudsburg that was formerly known as the "Old Glass Factory" and that he had used for many years as a warehouse in connection with his plumbing and heating supply business located several hundred feet away. The warehouse was a valid nonconforming use in an R–2 district where single- or two-family houses are the permitted uses. On July 3, 1987, a fire caused by arson destroyed a significant portion of the building, and Hammond later had the rest of it torn down, leaving only the stone foundation of the structure, with a paved parking area behind it. Hammond filed an application with the borough for a special exception to change the nonconforming warehouse to six nonconforming townhouse units and for an accompanying variance from side yard setback requirements.

The board held a public hearing on the application on November 18, 1987, at which Hammond presented evidence in support of his application, and various nearby residents testified in opposition. On December 16, at its next regular meeting, the board voted to deny the application. Hammond's counsel was present at that meeting. The board's counsel sent Hammond a letter dated December 18, 1987, informing him of the board's decision and stating that a formal opinion would be issued shortly. The board's formal opinion and order, containing findings of fact and conclusions of law, were sent to Hammond under cover of a letter dated January 6, 1988, forty-nine days after the public hearing.

Hammond appealed the board's decision to the court of common pleas, which affirmed. The court concluded that Hammond's deemed decision argument was without merit and that substantial evidence supported the board's conclusion that Hammond reasonably, and without the need for a special exception or variance, could convert the property to a permitted residential use. This appeal followed.

■ Where the court of common pleas has taken no additional evidence in a zoning appeal, this court's scope of review is to determine whether the zoning hearing board abused its discretion or committed error of law. *Friedlander v. Zoning Hearing Board of Sayre Borough*, 119 Pa.Commonwealth Ct. 164, 546 A.2d 755 (1988).

### *Section 908(9) Deemed Decision*

Section 908(9) of the MPC provides in part:

The board or the hearing officer, as the case may be, shall render a written decision or, when no decision is called for, make written findings on the application within 45 days after the last hearing before the board or hearing officer. Where the application is contested or denied, each decision shall be accompanied by findings of fact and conclusions of law thereon together with the reasons therefore. Conclusions based on any provisions of this act or of any ordinance, rule or regulation shall contain a reference to the provision relied on and the reasons why the conclusion is deemed appropriate in the light of the facts found.... Where the board fails to render the decision within the period required by this subsection, or fails to hold the required hearing within 60 days from the date of the applicant's request for a hearing, the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time.[2]

This court has addressed the precise deemed decision issue raised by Hammond on several occasions. In *Heisterkamp v. Zoning Hearing Board of the City of Lancaster*, 34 Pa.Commonwealth Ct. 539, 383 A.2d 1311 (1978), a zoning hearing board mailed written notice of its denial of a variance request to an applicant two days after the board made the decision, well within the forty-five-day period. The board sent written findings of fact and conclusions of

2. As reenacted and amended by the Act of December 21, 1988, P.L. 1329. The quoted language is virtually identical to the previous language of this subsection.

law to the applicant some three and one-half months after that. This court quoted language from the opinion of the Supreme Court in *Humble Oil and Refining Co. v. East Lansdowne Borough*, 424 Pa. 309, 227 A.2d 664 (1967), to the effect that a decision must carry with it an opinion, memorandum or explanation of some kind. However, we then noted that the Supreme Court had since rejected the *Humble Oil* language as dicta, in the case of *Garchinsky v. Clifton Heights Borough*, 437 Pa. 312, 263 A.2d 467 (1970). We stated:

> Accordingly, we have held that the 45–day requirement is satisfied when the decision reached by a zoning board is communicated to the parties even though it is not then accompanied by findings of fact, by an opinion or by any explanation of the result. *Morgan v. Zoning Hearing Board*, 3 Pa.Commonwealth Ct. 362, 283 A.2d 95 (1971).... In Morgan this Court expressed its opinion that the MPC distinguishes between the Board's 'decision' and the supporting 'findings of fact, conclusions and reasons therefor' and required a reversal only for failure to render a 'decision' within the specified period.

*Heisterkamp*, 34 Pa.Commonwealth Ct. at 542–43, 383 A.2d at 1313. *Accord A.Z.J.Z., Inc. v. Township of Springfield*, 36 Pa.Commonwealth Ct. 161, 387 A.2d 675 (1978).

Hammond acknowledges this state of our court's precedents, but argues that the decision of the Supreme Court in *Relosky v. Sacco*, 514 Pa. 339, 523 A.2d 1112 (1987), has changed the law on this point. In *Relosky*, a borough enacted a zoning ordinance but failed to establish a zoning hearing board. To adjudicate an application to subdivide property, the borough council itself held a hearing, at which it refused to allow the applicant to testify. The council orally informed the applicant of its denial of his application, but it never issued a written decision. The Supreme Court concluded that the borough's procedures were so flagrantly violative of the MPC, in particular of the section 908(5) right of the applicant to testify and to present evidence and the section 908(9) requirement of a written decision, that the

order of the court of common pleas, issuing a writ of mandamus to the borough to compel the borough to issue occupancy permits, should be affirmed.

■ The Supreme Court's discussion in *Relosky* of the section 908(9) violation emphasized that the plain language of the statute required that a "decision" within its meaning be written as opposed to oral. However, the question of the adequacy of written notice of a decision within the forty-five-day period, followed by findings and conclusions within some reasonable time outside that period, was not present in *Relosky*. Nothing in the Supreme Court's opinion suggested that the Court was rejecting or limiting its holding in *Garchinsky*. Accordingly, *Garchinsky*, and our court's precedents based on it, remain effective. Therefore, in the present case, the board's conduct in providing written notice of its decision within the statutory period and issuing an opinion with findings of fact and conclusions of law soon after the period expired did not constitute a violation of section 908(9) of the MPC.

### Standards for Allowance of the Change of Nonconforming Use

■ There is no constitutionally protected right to change from one nonconforming use to another; allowance of a change of nonconforming use is based upon the zoning ordinance and is limited according to its terms. *Hanna v. Board of Adjustment*, 408 Pa. 306, 183 A.2d 539 (1962); *Altpa, Inc. v. North Huntington Township Zoning Hearing Board*, 67 Pa.Commonwealth Ct. 60, 445 A.2d 1358 (1982).

Section 907 of the Borough of Stroudsburg Zoning Ordinance, relating to general requirements for changes of nonconforming uses, provides in part as follows:

3. When authorized by the Zoning Hearing Board as a special exception, a nonconforming use may be changed to another nonconforming use if the Zoning Hearing Board finds that all of the following standards are met:

A. The applicant shall show that a nonconforming use cannot reasonably be changed to a permitted use.

. . . .

C. There will be no increase in traffic generation or congestion including both vehicular and pedestrian traffic.

R. 113a–14a. Compliance with four other standards, relating to police power concerns, is not at issue.

Among the findings of fact made by the board were:

7. The value of the lot with public water and public sewer, without any structure located on it, is approximately $40,000.00.

8. There currently exists at or near the subject premises a congestion and parking problem.

R. 92a.

The board's crucial conclusion of law with regard to this application was as follows:

5. The applicant has failed to show that the change of the non-conforming use would not increase vehicular or pedestrian traffic in the area and that the non-conforming use cannot be changed to a conforming use.

R. 92a–93a.

As to the requirement of section 907 3A, that the applicant show that the nonconforming use could not reasonably be changed to a permitted use, Hammond's evidence was that construction of a single- or two-family home, permitted in this R–2 district, would entail removing the existing foundation and blacktop, at a cost of approximately $15,000, and building a new structure at a cost of roughly $90,000. With the $40,000 value of the land itself, Hammond calculated the price for such a building to be about $145,000. A real estate broker testified on Hammond's behalf that she did not believe that such a house could be sold for that price on that particular block. Hammond stresses that no testimony was presented to the contrary, and he claims that the board therefore made a finding of fact not supported by substantial evidence.

The board responds by pointing to Hammond's testimony that he received $90,000 as an insurance settlement from the fire at the warehouse. N.T. 51–52; R. 52a–53a. Therefore, the board contends, Hammond could build a structure in conformity with the ordinance for about $15,000 (i.e., the $105,000 cost of construction minus the $90,000 settlement). In addition, the board refers to the stated policy of section 901 of the zoning ordinance of reducing nonconforming uses to conformity,[3] as well as reasoning from our Supreme Court describing nonconforming uses as conditions that should be reduced to conformity as speedily as is compatible with the law and the Constitution, *Hanna v. Board of Adjustment*, 408 Pa. 306, 312–13, 183 A.2d 539, 543 (1962). The board argues that permitting Hammond to invest a great deal of money to change the former use to another nonconforming use would violate these principles.

The parties agree that the key question is the reasonableness of changing the property's use to a permitted use. Under the special exception provisions of the ordinance, change to a new nonconforming use, such as the townhouses proposed, can be considered only if devoting the property to a conforming one- or two-family residence would be unreasonable.

■ The zoning hearing board was not entitled to consider Hammond's fire insurance proceeds as a factor in the reasonableness of converting to a conforming use. The fire insurance receipts, resulting from a contract made by the owner, are disassociated from the land itself and therefore cannot be considered an attribute of the land affecting the zoning considerations. Certainly the zoning status of a parcel of land cannot be made dependent upon how provi-

---

**3.** Section 901 of the zoning ordinance provides:

> *§ 901. Purpose.* The regulations governing existing nonconforming uses set forth in this Part are intended to provide a gradual remedy for the incompatibilities resulting from such nonconforming use. While such uses are generally permitted to continue, these regulations are designed to restrict further investment in such uses thereby keeping them from becoming permanent establishments in appropriate locations.

dent the owner has been, with respect to obtaining, or failing to obtain, insurance protection. Insurance proceeds do not represent a windfall; they constitute receipts from a contract for which due consideration was doubtless paid, in the form of premiums.

■ However, even without considering the insurance proceeds, this court cannot say that the zoning hearing board lacked substantial evidence support for its determination that residential development could be reasonably achieved. The board was entitled to withhold credence from the opinion of Hammond's real estate witness, to the effect that the sale price of $145,000 would be unobtainable for a one- or two-family dwelling. Within the entire context known to it, the board was entitled to conclude that a potential two-family dwelling could constitute a reasonable development of this land in the context.

Although six townhouses on the remaining foundation doubtless would be the easiest and most profitable way for the owner to restore the property, the purpose of zoning law is to assure that essential community concerns take precedence over the individual owner's determination of what would be most profitable. On this record, we cannot say that the board erred by deeming the construction of a conforming structure to be a reasonable alternative.

The board also concluded that Hammond had not met his burden of showing that a grant of the application would not result in an increase in the generation or congestion of vehicular or pedestrian traffic. Hammond's evidence on this point consisted of his own testimony regarding the previous regular flow of traffic to the warehouse during business hours, and his assertion that a change to six townhouses would result in a decrease in traffic because the residents probably would leave for work in the morning and return in the evening. N.T. 45, 49–50; R. 46a, 50a–51a. In view of our affirmance of the board's conclusion regarding the reasonableness of converting this property to a permitted use, we need not rule on the board's conclusion regarding traffic, because the ordinance requires that an

applicant seeking to change from one nonconforming use to another must prove compliance with *all* of the express standards for approval of such an application.

### Conclusion

Accordingly, the decision of the Court of Common Pleas of Monroe County, affirming the decision of the zoning hearing board of the Borough of Stroudsburg, will be affirmed.

### ORDER

NOW, September 19, 1989, the order of the Court of Common Peas of Monroe County, at No. 97 Civil of 1988, dated December 7, 1988, is affirmed.