## Humble Oil and Refining Company *v.* East Lansdowne Borough, Appellant.

Argued January 13, 1967. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*William A. Welsh,* for appellant.

*Robert E. J. Curran,* with him *Kassab, Cherry, Curran and Archbold,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 15, 1967:

On March 3, 1966, the Humble Oil & Refining Company applied to the building inspector of East

Lansdowne for a building permit to erect a gasoline service station. The request was denied and the Humble Company appealed to the zoning board of adjustment, seeking a special exception, pursuant to the terms of §5 (Business District A) of the zoning ordinance of the borough. A hearing on the appeal took place on May 24, 1966. A further hearing scheduled for May 31st was cancelled by the borough. On the latter date, the board held a meeting, at the termination of which, it instructed the secretary of the board to notify the borough solicitor to prepare an opinion and order denying the application. The opinion and order were eventually prepared and they were signed by the board on August 8, 1966. A copy was sent to the Humble Company on August 11th. This was the first notice the Company received that any definitive decision had been made by the board.

The Borough Code provides, inter alia: "If the board of adjustment does not make a decision within forty-five days after the hearing or continued hearing, it shall be deemed that such board has decided in favor of the person or the officer of the borough aggrieved or affected who is seeking relief,"*

This 45-day period expired on July 16 if the calculation is made from May 31. It expired a week earlier if the calculation is made from May 24. On August 10 the Humble Company filed a complaint in mandamus to compel the borough to issue the building permit. After hearing, the court entered such an order, and the defendant borough has appealed.

The appellant contends that the action taken by the board on May 31st constituted a "decision" in contemplation of The Borough Code and that, therefore, the compulsory granting of an order was improvident. The

---

* Act of May 4, 1927, P. L. 519, §3307, added 1947, July 10, P. L. 1621, §93, as amended, August 25, 1959, P. L. 757, §1, 53 P.S. §48207 (f).

appellee contends, on the contrary, that there could not have been a "decision", as intended by the Act, until an opinion was filed and the applicant received notice thereof.

There is little logic in the position urged by the defendant borough. The Act permits any person aggrieved by the board's decision to appeal within 30 days after the decision. In appealing to the court of common pleas, the aggrieved person must set forth "that such decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and specifying the grounds upon which he relies." How could anyone appeal from what was done on May 31st when that action did not embrace an opinion specifying the grounds on which the application had been refused or granted? It is thus apparent that the "decision" referred to in the Act must carry with it an opinion, memorandum or explanation of some kind, in order to allow the aggrieved party to specify "the grounds upon which he relies."

The Code also requires that "notice of such decision shall forthwith be given to all parties in interest." The board admits that it gave no notice, but seeks to explain this omission by stating: "Since the decision was reached publicly, and entered on the Board's records, there was nothing secret or underhanded about it. The Board was charged with the responsibility to give notice. Undoubtedly it relied on either the Secretary or the Solicitor to do this for it. To the extent to which appellee was in need of relief for this oversight, it would have had the full cooperation of the Board and if further relief were necessary, appellee had only to apply to the Courts to obtain equity."

This explanation does not suffice. How was the Humble Company to ask for notice of an action of which it knew nothing? Was it to appeal to the court of common pleas demanding that the board give it no-

tice of its decision? This would in itself indicate that the Humble Company knew of the decision and, if it did, why should it ask for a notice? One does not call the weather bureau while it is raining to ask the state of the weather. In fact, after waiting 69 days after the "action" of May 31st, the Humble Company, on August 8th, reminded the board of its inaction. It is apparent that it was this prodding on the part of the company which brought about the rendition of the decision. Indeed, on that evening of August 8th, the board met to pass upon the written opinion and order. This is further indication that the board had not finally wrapped up the case on May 31st.

The board assumes that because "the decision was reached publicly," this somehow imparted notice to the appellee company of what it had done. There is nothing magical about the word *publicly*. All actions by courts and administrative agencies are presumably taken publicly, but they do not automatically communicate themselves to the parties affected. If notice were synonymous and simultaneous with action, there would have been no necessity for the Act to declare that "notice of such decision shall forthwith be given to all parties in interest." This language imports a specific act of notification. So long as the United States Mail operates, and it does operate, regardless of storm, rain, heat, or gloom of night, there is no excuse for failure to notify parties in interest or their counsel, when the law requires that notice be given.

The record manifests in other ways that the May 31st date could not have been the date of the decision made by the board. For instance, it was not until June 17th that the borough solicitor received the notes of testimony of the May 24th hearing. In all the time intervening between May 31st and August 8th, there was no indication when the board would render its authoritative decision. One of the most common traits

of mankind, and this is unfortunately particularly true in legal procedure, is that procrastination rather than celerity controls initiative, consideration, and decision. The Legislature recognized the existence of this inertia in the orderly disposition of pending governmental matters, and, accordingly, wisely provided that when a board of adjustment indolently allows 45 days to go by without a decision following a hearing, the complaining party shall have the benefit of that slothful inattention and gain the requested permit. Without this kind of coercive determination, a board could effectively prevent the erection of needed structures through the simple process of luxurious lolling while spiders of inattention spin webs of indifference over pending public problems.

Neither law nor justice, reason nor logic, can justify the delay of the board in the case at bar. The issue was an uncomplicated one and the record demonstrates that the opinion and order could have been prepared and handed down long before the expiration of the 45-day statutory period.

In *Blank v. Board of Adjustment,* 390 Pa. 636, this Court held that it was proper to dismiss an appeal from a decision of a board of adjustment after the 30-day prescribed by the pertinent statute had expired: "In view of the explicit language of the statute the court below was eminently correct in dismissing the appeal. Section 13 of the Act of March 21, 1806, P. L. 558, 4 Sm. L. 326, 46 PS §156, prescribes that: 'In all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued, . . .' We have consistently required that the procedural provisions of zoning statutes be rigidly adhered to."

Order affirmed.

Mr. Justice COHEN dissents.