# Southland Corporation v. Zoning Hearing Board of Warrington Township

*John Musenicz,* for Southland.
*Randolph Scott,* for Intervenor.
*R. Barry McAndrews,* for Warrington Twp.
*Arthur Harris,* for Zoning Hearing Board.

GARB, *P.J.,* June 10, 1985—These are two separate appeals from the decision (deemed decision) of the Zoning Hearing Board of Warrington Township. As a result of this deemed decision, the application of The Southland Corporation for both a use and dimensional variance was granted. Southland is the equitable owner of a portion of the tract in question and took this appeal primarily for the purpose of protecting its rights. Warrington Township and Ran-

dolph Scott, Esq., took these appeals from the effect of the deemed decision of the board. All appeals were timely filed. By our order herein, we will consolidate these matters for decision. Both cases were argued before the undersigned.

The property in question consists of approximately 9.5 acres of undeveloped land located at the southeast corner of the intersection of Shetland Drive and Route 611 with 395 feet of frontage on Route 611 and 850 feet frontage on Shetland Drive. The premises involved in the subject application, however, is the corner of the above described property and is approximately 230 feet in frontage along Route 611 and 225 feet on Shetland Drive consisting of slightly over one acre. Essentially, the application likewise consists in a subdivision although there is no evidence to reveal that any subdivision of the property has ever been approved. The application is for a use variance to permit the construction and operation of a Seven-Eleven food store with gasoline pumps and also a dimensional variance to permit this use on the slightly over one acre of land.

Hearings were held before the board on April 16, 1984, May 2, 1984 and May 21, 1984, at which time, the board chairman orally announced the decision of the board as a denial of the application. However, the record was clearly closed on May 2, 1984. The hearing on May 21, 1984 was scheduled specifically and solely for the purpose of the announcement of the board decision. The written decision of the board with its findings of fact and conclusion of law was entered on June 22, 1984, more than 45 days after the last hearing before the board. Therefore, under and pursuant to the provisions of section 908(9) of the Municipalities Planning Code, the Act of July 13, 1979, P.L. 105, 43 §1, 53 P.S. §10908, the relief sought by the applicant, South-

land Corporation, is "deemed approved". These appeals from that "deemed approval" were timely filed.

There are two procedural questions which must be addressed first. The first of these is whether a "deemed approval" is appealable. We believe that question is easily answered in the affirmative. In relevant part, section 908(9) provides as follows:

" . . . When a decision has been rendered in favor of the applicant because of the failure of the Board to meet or render a decision as hereinabove provided, (45 days after the last hearing before the Board) the municipality shall give public notice of said decision within 10 days in the same manner as provided in §(1) of this Section. *Nothing in this subsection shall prejudice the right of any party opposing the application to urge that such a decision is erroneous.*" (Emphasis supplied)

We believe that this language clearly reflects the intention of the legislature that a "deemed approval" by a zoning hearing board is an appealable order available to any party opposing the original application. See Foltz, Jr. v. Monroeville and Borden, 5 Pa. Commw. 304, 290 A.2d 269 (1972) and Upper Allen Township v. Zoning Hearing Board, 77 Pa. Commw. 582, 466 A.2d 292 (1983).

Having established that the matter is properly and appropriately before us, the second procedural question is with regard to our scope of review. We have found no law deciding this question. Southland argues that our scope of review is an extremely narrow one to determine only whether the record reflects that there has been a "deemed approval". Once that is determined, Southland argues that we may go no further in reviewing the essence of that decision in terms of the merits of the application itself as established on the record. With this we can-

not agree. The effect of such a narrow scope of review would give rise to serious constitutional concerns in terms of procedural due process, by virtue of the delegation of practically unlimited powers to the zoning hearing board as a quasi legislative body, under these circumstances, to determine the permissible uses of property regardless of the specific provisions of the zoning ordinance, merely by inaction, without the preservation of any rights of review of any other parties who have standing in the matter. If such were the case, a zoning hearing board need never act whenever it determines to grant the relief applied for, secure in the belief that its decision can never be overturned. The resulting anomalous conclusion is obvious. If the board enters its decision in appropriate form in writing 45 days after the last hearing granting the relief, all aggrieved parties have standing and would have the opportunity to appeal that decision and test its merits in a court of law. However, by waiting until the 46th day, the zoning hearing board would be able to cut off such rights of review. It is inconceivable to us that the legislature could have contemplated or intended such a result.

The obvious purpose of the "deemed approval" provisions of the Municipalities Planning Code was to compel zoning hearing boards to act in a timely manner so that the rights of property owners not be prejudiced by delay.

"Thus, the sanction of deemed approval is aimed at accelerating the deliberation process and improving the quality of decisions reached by municipal officials. We think those goals have been served by the deemed approval of appellant's preliminary plan in the instant case. We cannot, however, accept appellant's argument that section 508 was also intended to prevent aggrieved protestants from pursuing

their appeal rights under section 1007 of the MPC. As stated by the Court of Common Pleas:

'It would be an anomalous result, indeed, for the legitimate interests of aggrieved land owners to go unnoticed through no fault of their own but rather through the township's mistake. The legislature did not intend that the rights of these aggrieved land owners be sacrificed in the zeal to punish offending townships under Section 508 of MPC.' " Upper Allen Township v. Zoning Hearing Board, supra.

The purpose, therefore, of the "deemed approved" provisions is obvious. See Humble Oil and Refining Company v. East Lansdowne Borough, 424 Pa. 309, 227 A.2d 664 (1967). We do not believe that it was ever intended by the legislature to give the applicant a windfall in the form of protection from review of the merits of the application, merely because the zoning hearing board was dilatory.

Having decided that we must reach the merits of the "decision" of the zoning hearing board, the scope of review question remains unanswered. We have before us a full record made before the zoning hearing board. Ordinarily, where an appeal is taken from a decision of the zoning hearing board, without an independent taking of evidence, the trial court cannot make its own findings of fact but can only review the decision of the zoning hearing board to determine if an abuse of discretion or an error of law has been committed. Concord Township Appeal, 439 Pa. 466, 268 A.2d 765 (1970) and Schaaf v. Zoning Hearing Board of the Borough of Edinboro, 22 Pa. Commw. 50, 347 A.2d 740 (1975). On the other hand, where the court takes additional testimony, it must decide the case independently on its merits. General Battery v. Zoning Hearing Board of Alsace Township, 29 Pa. Commw. 498, 371 A.2d

1030 (1977). Unless the finding of a "deemed approved" type decision constitutes additional evidence, see Appeal of Chandler and Young, 18 Chester Co. L. Rep. 146 (1970), then our scope of review would be to determine whether the board committed an abuse of discretion or an error of law. However, such a scope of review would be ridiculous where it has been established that the decision of the board is a nullity.

We could decide this question as the Chester County Court did in Appeal of Chandler and Young, supra, by considering the determination of a "deemed approved" decision as additional evidence and, therefore, review the record and decide the case on its merits. However, we believe that this rationale is a fiction. We believe that we may either review the record made before the zoning hearing board or fix a hearing, and either supplement the record or establish an entirely new one. However, we are satisfied that a full and complete record was made before the zoning hearing board. Therefore, we believe that in this posture, our scope of review is an independent one of the record made before the zoning hearing board and a decision by this court on the merits of the application.

The property in question is zoned OI — professional office and light industrial district. The permitted uses in such a district are set forth in section 1203 of the zoning ordinance and do not include the construction or use of the property as a 7-11 convenience store with or without the sale of gasoline. The minimum lot size in such a zoning district is fixed at five acres. On the record here we are satisfied that the applicant has failed to bear its burden of proof to establish the prerequisites for either the use or dimensional variances sought.

Section 912 of the Municipalities Planning Code sets forth the requirements for grant of a variance. They are as follows:

"(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of zoning ordinance in the neighborhood or district in which the property is located;

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;

(3) That such unnecessary hardship has not been created by the appellant;

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in use." Thus, it has been established that variances should be granted only sparingly and only under exceptional circumstance and that in order to obtain one, the applicant must prove that the variance will not be contrary to the public interest, that unnecessary hardship will result if the variance

is not granted, and that it will not be granted solely because the applicant will suffer an economic hardship if he does not receive it. O'Neill v. Zoning Board of Adjustment, 434 Pa. 331, 254 A.2d 12 (1969). Personal and economic hardship alone will not support a grant of a variance, Heister Kamp v. Zoning Hearing Board of the City of Lancaster, 34 Pa. Commw. 539, 383 A.2d 1311 (1978) and the applicant must show more than the prohibition of a property's most profitable use. Appeal of Nowalk, 67 Pa. Commw. 545, 447 A.2d 1063 (1982).

None of the prerequisites for a variance were established on this record. Quite obviously, the property in question is of significant size, of utilitarian size and configuration, is well drained and at a most desirable location. The only evidence presented in support of the variance to prove unnecessary hardship was the fact that the property has been listed for sale since approximately 1968 with a real estate broker in Hatboro, Montgomery County, and that there have been no reasonable offers to purchase. Of course, saleability of the property is a factor to be considered, Philadelphia v. Earl Scheib Realty Corporation, 8 Pa. Commw. 11, 301 A.2d 423 (1973), but the mere placing of a "for sale" sign on the property and listing it with a local real estate broker without quoting a sales price does not evidence the active, prolonged and specific testing of the marketability of the ground which is essential to demonstrate that it cannot be sold or used for the purpose zoned. See Rubin v. Upper Southampton Township Zoning Hearing Board, 19 Pa. Commw. 469, 338 A.2d 773 (1975). The property was listed for sale with the one broker and listed only under the Montgomery County multi-list service. It was never listed with a Bucks County realtor or under the Bucks County multi-list service.

Of utmost impórtance, however, is the fact that the property has been listed for sale continuously at the selling price of $600,000. John T. Welsh, a qualified real estate broker and appraiser, testified that in his opinion a reasonable value of the property as of the date of the hearing was $300,000. Considering that the property values in the area had increased at least from 1968 to 1980, this evidence, if believed, would amply demonstrate that the property was materially overpriced. We find that to be the reason why it was not saleable on the market. Welsh likewise testified that in his opinion, the property was most attractive and desirable and would be readily saleable and useable for the purposes enumerated in the zoning ordinance, if offered at a price fairly reflective of its value. Interestingly enough, although the property has been in the hands of a real estate broker engaged by the property owner all these years, there was no evidence offered to contradict the testimony of Welsh. Therefore, we are constrained to find that the property had a value at the time of these hearings of $300,000, approximately one-half of the price for which the property had been offered for sale on the market since approximately 1968.

For the foregoing reasons, we find as fact that the property could well be used and utilized reasonably for the uses permitted by the zoning ordinance without the necessity of any dimensional variance for the purpose of those uses. There are no unique physical circumstances or conditions peculiar to this property and likewise, no unnecessary hardship with respect to the application of the provisions of the zoning ordinance to this property.

For the foregoing reasons, we will reverse the "deemed approved" decision with respect to these variance applications.

## ORDER

And now, this June 10, 1985, it is hereby ordered that these cases are consolidated for purposes of this decision.

It is likewise ordered that the "deemed approval" is reversed and the applications for variances, both for use and dimension, are dismissed.