John S. Christner and Nancy H. Christner, Appellants *v.* Zoning Board of the Borough of Mount Pleasant and Anna Mae Gearhart, Appellees.

88

Argued November 3, 1978, before Judges MENCER, DiSALLE and CRAIG, sitting as a panel of three.

*Frederick A. Boehm,* with him *Goehring, Rutter & Boehm,* for appellants.

*Milton V. Munk, Jr.,* for appellee.

OPINION BY JUDGE CRAIG, January 23, 1979:

This zoning case involves interpretation of the common zoning ordinance provision which affords relief to undersized lots held in separate ownership at the inception of zoning, to let them be developed for a permitted use.

Appellees are the owners of a single lot, thirty feet wide by one-hundred-twenty feet long, located in the R-2 Two-Family Residential District of Mount Pleasant Borough, Westmoreland County. On that 3,600 sq. foot lot, owners already have a one-family (four bedroom) dwelling, conforming as to use and also in conformity with a minimum lot area requirement of 3,000 square feet per family, more fully discussed below.

Owners now propose to erect on the same lot a detached garage which would also constitute another single-family dwelling because its second story is proposed to constitute a four-room dwelling unit.

As to uses permitted in the R-2 district, Section 14-2007 of the Mt. Pleasant Borough Zoning Ordinance (Ordinance) reads:

R-2 TWO-FAMILY RESIDENTIAL DISTRICT
Permitted Uses
1. Single-Family Dwellings
2. Two-Family Dwellings
3. Public & Parochial Schools
4. Public Parks & Playgrounds
5. Churches
6. Essential Services
7. Accessory Uses

With respect to lot and yard requirements for the R-2 District, Section 14-2008 of the Ordinance requires 6,000 square feet as the minimum total area of the lot, 3,000 square feet as the minimum lot area per family, fifty feet as the minimum lot width and eight feet as the minimum width of each side yard.

Thus, at present, as at the inception of zoning, appellees' lot falls short of the total area and lot width requirements, but it has been developed with a single-family dwelling conforming as to use and lot area per family.

The Mount Pleasant Zoning Hearing Board, on appeal to it, approved the owner's application to construct the additional single-family dwelling over the proposed garage as a matter of right under the ordinance terms—as explained below—and, with respect to its placement, granted a variance reducing the total side yard requirement from sixteen feet to six feet.

Objectors, the adjoining neighbors who are appellants here, appealed to the Westmoreland County Common Pleas Court and, from its affirmance of the Board's decision, to this Court.

The facts not being in dispute, the Board and court approval of the additional building and dwelling unit was based upon Ordinance Section 14-2008(3) which reads:

3. Any lot of record existing at the effective date of this Ordinance and then held in separate ownership different from the ownership of adjoining lots may be used for the erection of a structure conforming to the use regulations of the district in which it is located, even though its area and width are less than the minimum requirements of this Ordinance.

We are required to consider whether or not the Board and court committed any error of law in ap-

plying the above section to conclude that, in the words of the board, "a variance is not needed in regards to the area and width requirements" for the erection of a second single-family dwelling on the lot in question.

Proceeding with a very literal reading, we agree with both tribunals below that Section 14-2008(3) is applicable to owners' lot because, as of the inception of zoning, it fell short of the width requirement of fifty feet and also did not meet one kind of area requirement, the total lot area requirement of 6,000 square feet.

However, in equally literal terms, it plainly appears that the right to erect a structure, as granted by the Section, has already been fulfilled in that the lot is already being "used for the erection of a structure conforming to the use regulations of the district in which it is located. . . ." The clear purpose of the section is to allow a pre-existing lot, if too small under the district regulations, to be developed with a conforming use so that the lot will be of some value, *i.e.*, so that the regulations will not have a confiscatory effect by rendering the lot wholly useless.

We have previously held that a first structure must be allowed on a pre-existing lot, by variance if necessary, so that the owner is not deprived of use of the land. *Jacquelin v. Horsham Township,* 10 Pa. Commonwealth Ct. 473, 312 A.2d 124 (1973). Similarly, in *Harper v. Zoning Hearing Board of Ridley Township*, 21 Pa. Commonwealth Ct. 93, 343 A.2d 381 (1975) we allowed a variance to permit some use of the property, which was also the reasoning in *Grace Building Company, Inc. v. Hatfield Township*, 16 Pa. Commonwealth Ct. 530, 329 A.2d 925 (1974).

The section in question, in allowing "a structure" on an undersized lot, provides a praiseworthy means to the same end without the necessity of a variance.

From the outset, objectors have raised the question of the density requirement which, aside from the 6,000 square foot total area requirement, mandates an area of 3,000 square feet for each family dwelling unit. Although, as the board and court noted, the Mount Pleasant Ordinance does not specifically prohibit two separate dwellings on one lot, the 3,000 square foot density requirement clearly does prohibit, by its terms, more than one single-family dwelling on this 3,600 square foot lot. That requirement, now met, would be violated for the first time by the addition of another dwelling unit.

Although the board and court read Section 14-2008 (3) to allow any violation of an area requirement, including any *new* violation, we cannot agree that it can be read to allow area requirements to be ignored beyond the extent necessary to have a substantial use of the lot.

The board and court fell into error in interpreting the section to allow relief beyond the extent necessary to constitute substantial use. Noting that the district is called ''Two-Family Residential District'' and that the permitted uses include ''Single-Family Dwellings'' —stressing the plural—the board and court concluded that every lot in the district is entitled to have two family units.

First, it is clear that the plural number used in listing single-family dwellings under the R-2 district primarily reflects the expectation that there will be more than one dwelling in the R-2 *district*; it implies no entitlement to a plural number of dwellings on each lot, particularly when it must be read together with the density provision.[1]

-------

[1] The interpretation of the section by the board and court necessarily assumes that the allowance of a structure conforming to use regulations means that the maximum residential development, *as*

The interpretation error lies in reading the Section 14-2008(3) allowance of "a structure" conforming to use regulations, "even though" the lot's area and width are noncomplying in some respects, to allow another use-conforming structure resulting in a fresh breach of a requirement (the density provision) not heretofore violated.

Here, as in all other zoning ordinances, in *permitting* two-family dwellings (as well as one-family dwellings) the R-2 provisions state what is allowed by way of dwelling type subject to all other requirements, not what is *guaranteed* for each lot regardless of the requirements.

In addition to holding that there was error of law in allowing violation of the density requirement as of right, we must also conclude that, as a matter of law, the facts show no basis for the variance reducing the required side yard more than sixty percent, from a total of sixteen feet to a total of six feet.

The board allowed, and the court affirmed, the side-yard variance for the reasons we now review.

The board found that there was unnecessary hardship resulting from unique characteristics of the property in that the narrowness of this lot created a unique condition which does not permit the lot to be used in accordance with the Zoning Ordinance. However, the undisputed facts are that there is nothing which pre-

---

*indicated by the district title*, must be allowed on a substandard lot regardless of density requirements. However, such a rule of interpretation can be seen to be insupportable if we apply it to the other districts in the ordinance. Applied to the "R-3 Multiple-Family Residential District," the rule would permit every pre-existing, undersized lot to be used for a multiple family dwelling without any limit as to the number of family units (except the limit supplied by the height and yard controls) because Section 14-1002.21 of the Ordinance defines a multiple-family dwelling as having three or more units, without upper limit.

vents the lot from being used in accordance with the zoning ordinance because it is presently being used, for the existing dwelling, in accordance with the zoning ordinance. Again the fallacy is the assumption that every lot is guaranteed the right to be used at maximum residential density regardless of its size. The board found no unique physical characteristics other than the narrowness.

The board also based the variance on the reason that "the overwhelming majority of the neighbors do not object. . . ." Lack of objection has never been a basis for allowance of a variance. *Suhy v. Zoning Board of Adjustment,* 402 Pa. 657, 169 A.2d 62 (1961); *Riccardi v. Plymouth Township Board of Adjustment,* 393 Pa. 337, 142 A.2d 289 (1958).

Thirdly, the board found that there are "various other structures of a similar nature erected within two blocks of this lot."

The similarity of other structures, whether garage buildings or otherwise, plainly has no relevancy to a variance for a reduction of a side yard. If the board was intimating that there are other side yard variances or violations, such circumstances do not, as a matter of law, provide any legal justification for a variance. *Drop v. Board of Adjustment,* 6 Pa. Commonwealth Ct. 64, 293 A.2d 144 (1972).

None of the findings constitute a legal basis for the variance, which should have been denied.

Therefore, the decision of the court below should be reversed and the appeal from the zoning hearing board decision sustained.

### ORDER

AND Now, this 23rd day of January, 1979, the decision of the Court of Common Pleas of Westmoreland County, in the above-captioned case, docketed at No. 2567 of 1976, is reversed, the appeal from the de-

cision of the Zoning Hearing Board of Mount Pleasant is sustained, and the building permit to Anna Mae Gearhart is revoked.