# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sidney Hostetter and Evelyn Koppel, his wife,

        Appellants

    v.

South Londonderry Township Zoning Hearing Board, Corey Andrew and Anne Andrew, his wife

:
:
:
:
:
:
:
:
:
:
:

No. 66 C.D. 2023

Argued: December 11, 2024

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE LORI A. DUMAS, Judge
            HONORABLE STACY WALLACE, Judge
            HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOLF               FILED: January 23, 2025

Sidney Hostetter and Evelyn Koppel (Ms. Koppel) (collectively, Objectors) appeal from an order of the Court of Common Pleas of Lebanon County (trial court) that denied their land use appeal from the decision of the South Londonderry Township (Township) Zoning Hearing Board (ZHB) granting Corey Andrew (Mr. Andrew) and Anne Andrew (Mrs. Andrew) (collectively, Landowners) a dimensional variance to build a new garage on their property. We affirm.

## Background

Landowners own and reside on property located at 131 Valley Road, Mount Gretna, Pennsylvania (Property). ZHB Decision, 1/5/22, at 1. They sought a variance from Section 210.H of the South Londonderry Township Zoning

Ordinance (Ordinance)[1] requiring a minimum front yard setback of 40 feet to construct an attached 26-foot by 30-foot garage in the front yard setback. *Id.*

The ZHB held a hearing on November 22, 2021. At the hearing, Mr. Andrew, appearing *pro se*, testified that his home was built in 1977 and that Landowners purchased it three years prior. ZHB Decision, 1/5/22, at 1-2. Mr. Andrew stated that the existing one-car garage, located on the west side of the home, is inadequate to meet his family's needs. Landowners wished to put the proposed garage on the east side of the home – on the opposite side of the home from the existing garage. *Id.* at 2.

The garage plan (Landowners' Exhibit No. 3) shows a 26-foot by 30-foot garage that is attached to the existing dwelling with a driveway. ZHB Decision, 1/5/22, at 2; Reproduced Record (R.R.) at 94a. Mr. Andrew testified that the proposed plan does not impact the impervious coverage limitation on the Property. *Id.* He further indicated that the garage structure will be slightly higher than the portion of the home to which it will be attached, but not higher than the overall height of the house. *Id.*

Mr. Andrew stated that the proposed garage location did not require him to remove any existing trees. Mr. Andrew indicated he "is an outdoors person who seeks to preserve the trees and other vegetation" on the Property. ZHB Decision, 1/5/22, at 3. Mr. Andrew testified that since moving into the home, he has addressed the forestry issues on the Property by removing underbrush, which was affecting the healthy growth of the trees. *Id.*

Mr. Andrew also testified concerning the "unique issues with the Property." ZHB Decision, 1/5/22, at 3. Per Mr. Andrew, the location of the home

---

[1] South Londonderry Township, Pennsylvania, Zoning Ordinance §210.H (November 12, 2013).

on the Property created a narrowness issue, which affects the proposed location of the garage due to limited side yard areas. *Id.* Mr. Andrew stated that the garage could not be placed on the west side of the Property because of an existing natural swale in that location. Furthermore, the west side of the Property is the only side from which one can access the rear of the home and the lower portion of the Property. *Id.*

Mr. Andrew also indicated that the slope of the Property presents additional issues. In this regard, the lot slopes south to north with a 40-foot elevation drop. ZHB Decision, 1/5/22, at 3. The slope begins at the front edge of the existing dwelling and continues to descend to the rear property line. *Id.* Based on these slope changes, Mr. Andrew asserted that the rear of the Property is not suitable for the placement of the proposed garage. *Id.*

Ms. Koppel testified in opposition to the variance request. She lives in the home adjacent to Landowners, on the east side, the side of the proposed garage. She has resided in her home for 14 years. ZHB Decision, 1/5/22, at 4. Ms. Koppel stated that she too "treasures the outdoors." *Id.* She and her husband are avid gardeners and have hosted tours of their gardens. Ms. Koppel expressed concern that the proposed structure will block the sun from her gardens and obscure her view from her property to the rest of the neighborhood to the west. *Id.*

Mrs. Andrew testified as well. Like Ms. Koppel, Mrs. Andrew is an avid gardener. ZHB Decision, 1/5/22, at 4. She noted that the Koppel home sits to the east and, therefore, because the sun rises in the east, there would be no obstruction of the sun on the Koppel gardens if the proposed garage was located to the west of the Koppel property. *Id.*

Other citizens of the Township testified in support of the variance request.  Barbara Close, the neighboring landowner to the west, testified in support of the variance application and stated that the proposed garage would not be detrimental to the character of the neighborhood.  ZHB Decision, 1/5/22, at 5.

Jill Martin, who lives a few blocks away from the Property, testified that she walks the neighborhood several times a day.  She believes the proposed garage would not alter the character of the neighborhood and did not oppose the application.  ZHB Decision, 1/5/22, at 5.

Reverand Robert Wallace testified that he has lived in the neighborhood for six and one-half years.  Because the neighborhood is not "cookie cutter," he believes the proposed plan would enhance the neighborhood.  ZHB Decision, 1/5/22, at 5.

Neighboring landowners Jean Horstick, Arlene Albrite, and Robert Nicalodi also testified they did not have an objection to the application.  ZHB Decision, 1/5/22, at 5.

The Township took no position on the application.

The ZHB noted that the criteria for issuing zoning variances are set forth in Section 704.D of the Ordinance.[2]  The ZHB may grant a variance provided all the following findings are made where relevant:

> 1. That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary

---

[2] Section 704.D largely mirrors Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10910.2.  Section 910.2 of the MPC does not include language addressing floodplain management.

4

hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of this Ordinance in the neighborhood or Zone in which the property is located;

2. That because of such physical circumstances or conditions, there is not [sic] possibility that the property can be developed in strict conformity with the provisions of this Ordinance and that the authorization of the variance is therefore necessary to enable the reasonable use of the property;

3. That such unnecessary hardship has not been created by the [applicant];

4. The variance will not alter the essential character of the neighborhood or otherwise impair the appropriate use or development of adjacent property or be detrimental to the public welfare;

5. That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue; [and]

6. The variances shall require compliance with the Township Floodplain Management Ordinance[.][3]

Supplemental Original Record at 338.

The ZHB discussed each of the criteria as follows.

### A. Unique Physical Circumstances or Conditions/No Possibility the Property can be Developed in Strict Conformity With the Ordinance/Creation of the Hardship

---

[3] The ZHB decision does not discuss floodplain management, presumably because it is not relevant to Landowners' variance request.

The ZHB held that the Property has unique physical circumstances. The location of the home in relation to the side yard setbacks, the natural swales, and the slope of the lot create an unnecessary hardship which Landowners did not create because the home has been on the lot since 1977. ZHB Decision, 1/5/22, at 8. Thus, the lot cannot be developed in strict compliance with the Ordinance. *Id.* Furthermore, there is insufficient room to place the proposed garage on the west side of the Property and access issues to the rear of the Property on the west also prevent the construction of the garage at that location. *Id.* Finally, the back yard slope prevents the garage from being placed in the rear of the Property. *Id.*

## B. Altering the Essential Character of the Neighborhood or Impair Use or Development

The ZHB found that the requested relief will not alter the essential character of the neighborhood, or otherwise impair the appropriate use or development of adjacent property or be detrimental to the public welfare. ZHB Decision, 1/5/22, at 8. The neighbors who appeared and testified were overwhelmingly in favor of the variance. *Id.* They testified that the neighborhood is not one in which all the homes look alike, and that this project would add to, not detract from, the character of the neighborhood. *Id.*

The ZHB observed that Objectors' main concern was with the garage blocking the sun from their gardens. ZHB Decision, 1/5/22, at 8. The ZHB noted, however, that Mrs. Andrew testified that Objectors live to the east of the proposed garage and would receive sunlight most of the day, unobstructed by the proposed garage. *Id.* Moreover, by imposing the larger side yard setback on Landowners, as

6

argued by Objectors, the proposed garage will be further away from Objectors' property and gardens. *Id.*

### C. Minimum Variance to Afford Relief

The ZHB also determined that the relief requested by Landowners would be the minimum variance to afford relief. Landowners agreed to construct the proposed garage in compliance with the side yard setback, as determined by the ZHB. ZHB Decision, 1/5/22, at 8-9. The ZHB further held, "given the proposed use of the garage to store the trailers depicted in the photographs, the garage, and the corresponding relief requested, is the minimum variance to afford relief." *Id.* at 9.

Accordingly, the ZHB granted Landowners' request for a dimensional variance with conditions (Landowners must construct the proposed garage in compliance with a 15-foot side yard setback).[4] Objectors appealed to the trial court, which did not take any additional evidence. The trial court affirmed the ZHB and dismissed Objectors' appeal. Objectors now appeal to this Court.

### Issue

Before this Court,[5] Objectors argue that Landowners have not met any of the variance criteria set forth in Section 704.D of the Ordinance.

---

[4] During the ZHB proceeding, an issue arose concerning the required minimum side yard setback. Landowners believed the minimum side yard setback was 10 feet. Objectors argued the Ordinance required a 15-foot setback. ZHB Decision, 1/5/22, at 3. Landowners stipulated that the setback was 15 feet and that they would modify the garage design by either shifting the garage to the west to stay in compliance with the setback requirements or reduce the size of the garage accordingly, or both. *Id.* at 4.

[5] Where, as here, no additional evidence is presented to the trial court, our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. *Allegheny West Civic Council, Inc. v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 689 A.2d 225, 227 (Pa. 1997).

# Discussion[6]

### A. "The [ZHB] erred as a matter of law and/or abused its discretion in finding that the variance represents the minimum variance that affords relief and represents the least modification possible of the regulation in [sic] issue."[7]

### Parties' Arguments

Objectors set forth several proposed alternatives that they assert will allow a garage to be built on the left/west side of the Property, thereby requiring either no variance, or a smaller variance, from the side yard setback as opposed to the variance currently sought from the front yard setback.[8] Objectors further argue that Landowners could construct the garage at the rear of the Property. Objectors' Brief at 22.

Objectors preemptively reject Landowners' contentions that the garage cannot be built in the rear portion of the Property because of an existing natural swale and sloping, and because such action will impede access to the rear of the Property. Objectors challenge whether a swale even exists and emphasize there was no testimony concerning the exact location, length, width, or depth of the swale. Objectors' Brief at 22-23. Objectors emphasize that there is no stormwater

---

[6] Objectors' issues on appeal overlap at times. For the sake of simplicity, we address Objectors' issues in the manner that they do in their merits brief.

[7] Objectors' Brief at 15.

[8] Objectors assert Landowners could (1) build an additional parking bay to their existing garage without a variance and remain in compliance with the Ordinance; (2) build a 2-bay garage on the left/west of the Property by reducing the width of their proposed garage to 18 feet and requiring only a 1-foot variance; or (3) build their 26-foot by 30-foot garage on the left/west portion of the Property and only require a 9-foot setback. Objectors' Brief at 19-21.

management plan associated with the swale. *Id.* at 24. Finally, as for sloping, Objectors contend that sloping would not prevent building the garage in the rear of the Property. *Id.* at 25. In Objectors' view, sloping only becomes an issue with driveways; thus, "the issue would not be building the garage in the rear due to sloping, but being able to build a driveway to access the garage in the rear of the [Property]." *Id.* at 26. Objectors emphasize that Landowners did not present any "topographical or other objective studies" supporting the sloping in the rear yard.[9] *Id.* at 26.

The ZHB counters that Objectors' focus on the proffered alternatives is misplaced and ignores the substantial evidence presented in the case. ZHB Brief at 24. Here, substantial evidence in the record supports the ZHB's conclusion that a swale on the west side of the Property prevents construction of the garage in that location. *Id.* All of Objectors' size alternatives are of no consequence given the ZHB's finding, based on the evidence presented, that the swale precludes construction in that area. *Id.* The same is true for Objectors' argument that the garage could be constructed, without variance relief, in the rear of the home. *Id.* The slope testimony accepted by the ZHB also makes this alternative unavailable. *Id.*

Landowners[10] stress that the variance they request is the minimum variance needed for relief. Landowners' Brief at 4. The front yard setback they seek

---

[9] Objectors maintain that despite the 200 feet of sloping reflected in the garage plan (Landowners' Exhibit No. 3), Landowners could nevertheless build an accessible garage and remain in compliance with the Ordinance. Objectors' Brief at 26-27. Objectors further assert that the sloping would not prevent building a driveway on either side of the Property to allow access to a garage in the rear of the Property. *Id.* at 28.

[10] Landowners appear *pro se* in this appeal.

consumes only 50% of the setback; meanwhile, building on either side of the house would consume a greater percentage of the side yard setback. *Id*. at 5.

## Analysis

Our Supreme Court has cautioned "that a reviewing court may not disturb the findings of a zoning board if the record indicates that the findings are supported by substantial evidence." *Metal Green Inc. v. City of Phila.*, 266 A.3d 495, 513 (Pa. 2021). Substantial evidence "means relevant evidence which a reasonable mind might accept as adequate to support a conclusion." *Id.* "[R]eviewing courts are not super boards of adjustment or planning commissions of last resort." *Id.* at 513-14. "[A] court errs when it substitutes its judgment on the merits for that of a zoning board whose findings are supported by substantial evidence." *Id.* at 514 (citing *Marshall v. City of Phila.*, 97 A.3d 323, 331 (Pa. 2014)).

Importantly, "[in] zoning cases, it is well [] settled that the [ZHB] is the fact finder, with exclusive province over matters of credibility and weight to be afforded the evidence. [T]his Court will not engage in fact finding or disturb the [ZHB's] credibility determinations on appeal." *Manayunk Neighborhood Council v. Zoning Bd. of Adjustment of City of Phila.*, 815 A.2d 652, 658-59 (Pa. Cmwlth. 2002) (citation omitted). Further, "[i]t is irrelevant whether the record contains evidence to support findings other than those made by the fact finder; the critical inquiry is whether there is evidence to support the findings actually made. If there is, an appellate court may not disturb the findings." *Renaissance Real Est. Holdings, L.P. v. City of Phila. Zoning Bd. of Adjustment*, 199 A.3d 977, 983 (Pa. Cmwlth. 2018) (citations omitted).

Based on our review of the record, we believe substantial evidence supports the ZHB's determination. The ZHB credited the following unrebutted

10

testimony from Mr. Andrew, an experienced builder, concerning the unique physical conditions on the Property:

> Currently, on the right side or east side of our dwelling, we only have [10] usable feet of space before we meet the property setback lines. And currently, on the left side or the west side of the dwelling, we only have [17] feet of usable space to the property line. However, this [17] feet is intervened through with a drainage swale traveling between the properties. So because of the narrowness of the [P]roperty, we cannot build an addition to either the left side of the [P]roperty or the right side of the existing dwelling. With that being said, the exceptional topography also limits our ability to put a building in the rear of the [P]roperty. The lot slopes severely from south to north with a considerable elevation drop of over [40] feet. The slope begins at the front edge of the existing dwelling, and descends all of the way to the rear of the [P]roperty line where it abuts the rail trail right[-]of[-]way.
>
> Access to this portion of the [P]roperty is eliminated by the nature of the [P]roperty, the drainage swale on the one side of the [P]roperty, and no access through the woods on the other side of the [P]roperty as well.
>
> So we believe that due to the nature of this situation the [P]roperty has, that we're limited to where we can build the garage. And that is why we chose the spot that we are looking at and proposing here tonight.

R.R. at 6a-7a.

Based on our review of the record, particularly Mr. Andrew's testimony, we cannot say that the ZHB erred in finding that unique issues with the Property prevented a garage from being built on the left/western portion of the Property, the rear of the Property, or the right/eastern side of the Property. We agree with the ZHB's conclusion that Objectors' arguments concerning alternative

11

locations ignore the substantial evidence presented by Mr. Andrew. Because substantial evidence supports the ZHB's findings, we will not disturb them on appeal.

**B. "The [ZHB] erred as a matter of law and/or abused its discretion in finding that the [] [P]roperty could not be developed in strict conformity with the provisions of the [] [O]rdinance because of the physical circumstances or conditions of the [P]roperty, and that the authorization of a variance is therefore necessary to enable the reasonable use of the [P]roperty."[11]**

### Parties' Arguments

Objectors once again claim that Landowners could develop the Property in strict conformity with the provisions of the Ordinance. Specifically, Objectors argue that Landowners could build a garage on the left/west side of the Property to add one additional parking bay and remain in compliance with the Ordinance without the need for a variance. Objectors' Brief at 33. In the alternative, Objectors assert that Landowners could build a garage with their desired dimensions in the rear of the Property and remain compliant with the Ordinance. *Id.*

The ZHB responds that based on the hardships found by the ZHB, Landowners cannot develop the Property in strict compliance with the Ordinance. The ZHB accepted evidence that, given the limitation of the swale on the west side of the Property, the garage cannot be constructed in that location and access to the rear of the Property is prohibited. ZHB Brief at 18. Furthermore, given the wooded area on the east side of the Property, the garage could not be constructed there, or access gained near the rear of the Property, without substantial cost or change to the

---

[11] Objectors' Brief at 25.

character of the neighborhood.  *Id.*  Finally, given the lack of access to the rear of the Property and the accepted slope of the location being a "[20] some feet of fall in less than [40] lineal feet," the garage could not be constructed in the rear of the Property.  *Id.*  Thus, without the requested variance, Landowners are unable to develop the Property at all.[12]  *Id.*

## Analysis

This portion of Objectors' argument is yet another attempt to challenge the findings of the ZHB.  As noted above, Mr. Andrew's testimony provided substantial evidence supporting the ZHB's conclusion that Landowners are unable to build on the left/western side of the residence, on the right/eastern side of the residence, or in the rear of the Property.  Tellingly, Objectors did not counter Mr. Andrew's testimony with any witnesses or evidence to the contrary.  For these reasons, Objectors' argument must fail.

**C. "The [ZHB] erred as a matter of law and/or abused its discretion in finding that there are unique physical circumstances or conditions peculiar to the [P]roperty and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the [] [O]rdinance in the neighborhood or district in which the [P]roperty is located."[13]**

## Parties' Arguments

---

[12] Landowners largely echo this argument and emphasize that, to the extent Objectors argue that the garage could be built on the rear of the Property without the need for a variance, the physical conditions of the Property make it impossible to build a garage in that location. Landowners' Brief at 6.  Landowners highlight, *inter alia*, the existence of the back yard slope. *Id.* at 7.

[13] Objectors' Brief at 33.

Objectors assert that the ZHB erred in finding there are unique physical circumstances or conditions peculiar to the Property and that Landowners' unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the Ordinance. Objectors dispute Landowners' assertion that the Property is too narrow to allow development. Objectors maintain there is no narrowness issue, as the width of the Property is greater than the minimum lot width provided in the Ordinance. Objectors' Brief at 34-5. Landowners' dissatisfaction is with the location of the existing home on the Property and what remaining land they have available to the left and right of the existing premises to develop. *Id.* at 35. Objectors once again state that Landowners can reasonably develop the Property by complying with the Ordinance and/or only seeking a minimal variance. *Id.* As for the swale and sloping, Objectors incorporate their prior argument set forth above. Objectors' Brief at 34.

The ZHB responds that Mr. Andrew's testimony sufficiently showed that the remaining area in the side yards is too narrow to build a garage and that there is inadequate access and too steep of a slope in the rear yard to build the garage. ZHB Brief at 15-16. The ZHB points out that Mr. Andrew has been a builder for 20 years and that his testimony was accepted by the ZHB. *Id.* at 17. Contrary to Objectors' assertions, the ZHB insists there was uncontradicted, substantial evidence of an unnecessary hardship. *Id.* at 18.

In this vein, Landowners' argument is largely similar. Landowners note that they provided significant evidence in the form of testimony, photographs, topography maps, and construction plot plans to support their assertion that the unique physical characteristics of the Property make it impossible for them to develop the Property in strict conformity with the Ordinance. Landowners' Brief at

14

2.  Landowners note that Objectors provided no evidence to support their claim that Landowners did not meet the requirements for a variance except for the testimony of Ms. Koppel.  *Id*. at 2.  Landowners also note that the conditions on the Property existed at the time they purchased it and that they did not create them. *Id*. at 2.

**Analysis**

"A dimensional variance involves a request to adjust zoning regulations to use the property in a manner consistent with regulations[,] whereas a use variance involves a request to use property in a manner that is wholly outside zoning regulations."  *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hr'g Bd.*, 83 A.3d 488, 520 (Pa. Cmwlth. 2014) (citing *Hertzberg v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 721 A.2d 43 (Pa. 1998)).  Although the same criteria apply to use and dimensional variances, "in *Hertzberg*, the Pennsylvania Supreme Court set forth a more relaxed standard for establishing unnecessary hardship for a dimensional variance as opposed to a use variance."  *Id*.  Pertinent here, the *Tri-County Landfill* Court noted:

> Under *Hertzberg*, courts may consider multiple factors in determining whether the applicant established unnecessary hardship for a dimensional variance. These factors include the cost of the strict compliance with the zoning ordinance, the economic hardship that will result from denial of a variance, and the characteristics and conditions of the surrounding neighborhood.
>
> Although *Hertzberg* eased the requirements, it did not remove them.  An applicant must still present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship.  Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion

15

required to obtain a variance is not satisfied even under the relaxed standard set forth in *Hertzberg*.

*Id.* (citations omitted).

The ZHB's "findings are owed deference, particularly its determination that a variance applicant satisfied the unnecessary hardship criterion. This is especially so in light of the [ZHB's] 'expertise in and knowledge of local conditions.'" *Liberties Lofts LLC v. Zoning Bd. of Adjustment*, 182 A.3d 513, 530 (Pa. 2018) (quoting *Marshall*, 97 A.3d at 333). Furthermore, in *Marshall*, the Supreme Court "placed considerable weight on the community support" for an applicant's proposal. *Id*.

Based on our review of the record, we cannot say that the ZHB erred in finding that Landowners met their burden of proving unnecessary hardship. The ZHB found that Mr. Andrew's uncontradicted testimony supported the conclusion that the Property has unique characteristics entitling Landowners to variance relief. Because the ZHB's findings are supported by substantial evidence, we will not substitute our judgment for that of the ZHB.

### D. "The [ZHB] erred as a matter of law and/or abused its discretion in finding that any unnecessary hardship was not created by [Landowners]."[14]

### Parties' Arguments

Objectors argue that the ZHB erred as a matter of law and abused its discretion in finding that any unnecessary hardship was not created by Landowners. Assuming a hardship exists, Objectors assert it was caused by Landowners and their desire to develop the Property as they wish. Objectors' Brief at 36. Landowners

---

[14] Objectors' Brief at 36.

16

moved into the Property three years prior to the proceedings and were aware of the circumstances of the Property when they purchased it. *Id.* There has been no change in circumstances since they purchased the Property and, therefore, any undue hardship was created by Landowners. *Id.*

The ZHB and Landowners respond that Landowners did not create the hardship. The house was constructed in 1977, and the conditions on Landowners' Property existed at the time they purchased it. Objectors did not present testimony or evidence that Landowners modified either the slope, swale, tree line, or the residence, such that they created any of the hardships found by the ZHB. ZHB Brief at 20; Landowners' Brief at 8.

### Analysis

This Court has discussed whether hardship is self-created such that a variance should be denied because an applicant purchased a property and was aware of its features and zoning requirements. *See Solebury Twp. v. Solebury Twp. Zoning Hr'g Bd.*, 914 A.2d 972, 976 (Pa. Cmwlth. 2007). In *Solebury Township*, this Court noted:

> [T]he mere fact that an applicant for a variance purchased the property with knowledge of the hardship does not alone preclude him from being granted the variance.
>
> The mere fact that property changes hands after the adoption of zoning cannot be the basis for holding that no variance can thereafter be granted with respect to any matter of which the purchaser could be aware . . . . Because zoning considerations relate primarily to the circumstances of the property and not to the identity of the owners, it would seem that a subsequent purchaser can stand in the shoes of the original owner with respect to a

17

variance, provided that the claimed hardship does not arise out of the purchase itself.

With respect to a landowner who purchases with knowledge of the property's condition and existing zoning restrictions, the hardship is deemed self-inflicted only where he has paid an unduly high price because he assumed the anticipated variance would justify the price, or where the size and shape of the parcel was affected by the transaction itself.

*Id.* at 976-977 (quoting *Marlowe v. Zoning Hr'g Bd. of Haverford Twp.*, 415 A.2d 946, 950-51 (Pa. Cmwlth. 1980) (internal citations omitted)).

Here, there is no evidence in the record that Landowners purchased the Property at an unusually high price or that the size and shape of the Property was affected by the purchase transaction. Furthermore, there is no indication in the record that Landowners modified the Property in any way such that they created the hardship. Under the circumstances, we conclude that Objectors' argument is meritless.

**E. "The [ZHB] erred as a matter of law and/or abused its discretion in finding that the variance will not alter the essential character of the neighborhood in which the [P]roperty is located."[15]**

**Parties' Arguments**

Finally, Objectors dispute the ZHB's conclusion that the variance will not alter the essential character of the neighborhood. They note that the variance reduces the front yard setback in half and creates a structure that protrudes 30 feet from the front of the house into the front yard. Objectors' Brief at 37. No other

_____

[15] Objectors' Brief at 37.

18

property in the neighborhood will have this feature. Furthermore, the Property will become the only property in the immediate neighborhood that would have this feature. *Id*. Additionally, the Property will become the only property in the immediate neighborhood that would have two separate garages on each side of the Property. *Id*. Although several neighbors testified on behalf of Landowners, Objectors maintain that testimony "reflects more on whether the variance would be detrimental to public welfare and not whether the variance would alter the essential character of the neighborhood, which is more of an objective standard." Objectors' Brief at 37-38.

The ZHB responds that "overwhelming evidence" supports its conclusion granting the variance will not alter the essential character of the neighborhood. ZHB Brief at 20. The ZHB cites the testimony of Mr. Andrew, Barbara Close, Jill Martin, Reverand Robert Wallace, Arlene Albrite, and Robert Nicolodi, each of whom supported Landowners' variance request. The ZHB further notes that Objectors were the only individuals who appeared to oppose the variance request.[16] *Id*. at 22.

### Analysis

Community support is to be afforded considerable weight when an applicant seeks a variance. *Marshall*, 97 A.3d at 333; *Tidd v. Lower Saucon Twp. Zoning Hr'g Bd.*, 118 A.3d 1, 9 (Pa. Cmwlth. 2005). In this case, there is substantial evidence in the record supporting the ZHB's conclusion that the variance will not alter the essential character of the neighborhood. Numerous neighbors, including Barbara Close, Jill Martin, Reverand Robert Wallace, Arlene Albrite, and Robert Nicolodi, testified in support of the variance request. R.R. at 62a-74a. Their

---

[16] For their part, Landowners add that by placing the proposed garage at the front of the Property, they will avoid having to remove trees from the Property. Landowners' Brief at 8-9.

testimony reflected that the proposed garage would not be detrimental to the character of the neighborhood and would be an enhancement to the neighborhood's unique features. *Id.* Clearly, the ZHB did not err in accepting this unrebutted testimony.

## Conclusion

For the reasons set forth above, the ZHB did not err in granting Landowners a dimensional variance. The findings of the ZHB are supported by substantial evidence and, accordingly, the order of the trial court is affirmed.

_____
MATTHEW S. WOLF, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sidney Hostetter and Evelyn : 
Koppel, his wife, : 
               Appellants : 
      v. :   No. 66 C.D. 2023
                  : 
South Londonderry Township : 
Zoning Hearing Board, Corey Andrew : 
and Anne Andrew, his wife : 

# **O R D E R**

AND NOW, this 23rd day of January, 2025, the order of the Court of Common Pleas of Lebanon County, dated December 30, 2022, is AFFIRMED.

_____
MATTHEW S. WOLF, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sidney Hostetter and Evelyn Koppel,   :
his wife,   :
           Appellants   :
   :
      v.   :
   :
South Londonderry Township   :
Zoning Hearing Board, Corey Andrew   :   No. 66 C.D. 2023
and Anne Andrew, his wife   :   Argued: December 11, 2024

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE FIZZANO CANNON          FILED: January 23, 2025


Respectfully, I disagree with the Majority's conclusion. The South Londonderry Township (Township) Zoning Hearing Board (ZHB) committed a clear error of law in granting Corey Andrew and Anne Andrew (Landowners) a dimensional variance. Accordingly, the order of the Court of Common Pleas of Lebanon County (Common Pleas) affirming the ZHB's decision should be reversed.

Landowners seek a variance from the required 40-foot minimum front yard setback required by the Township's zoning ordinance.[1] Landowners' property is improved with a residence and a garage, which they are using as such. However, Landowners want to construct a second attached garage that would encroach into the front yard setback to within 20 feet of their property line. They are seeking to add

---

[1] S. LONDONDERRY TWP., PA., ZONING ORDINANCE OF 2024.

the second garage for the stated reason that their family has "outgrown" the existing garage and they would like additional garage space to house their trailers, as well as for additional automobiles they anticipate acquiring at some future time as their children start driving. Reproduced Record (R.R.) at 17a-18a.

Pursuant to Section 910.2(a) of the Pennsylvania Municipalities Planning Code (MPC),[2] all of the following findings must be made before a variance may be granted:

> (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.
>
> (2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.
>
> (3) That such unnecessary hardship has not been created by the appellant.
>
> (4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

---

[2] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. § 10910.2(a).[3]

Regarding unnecessary hardship that prevents reasonable use of one's property, Pennsylvania law is well settled that "[a] variance, whether labeled dimensional or use, is appropriate 'only where the *property*, not the person, is subject to hardship.'" *Yeager v. Zoning Hearing Bd. of City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001) (quoting *Szmigiel v. Kranker*, 298 A.2d 629, 631 (Pa. Cmwlth. 1972) (emphasis original)). Although the standards are somewhat relaxed as applied to an application for a dimensional variance, "it is still the case that '[t]he burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and compelling.'" *Pequea Twp. v. Zoning Hearing Bd.*, 180 A.3d 500, 507 (Pa. Cmwlth. 2018) (quoting *Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 149 (Pa. Cmwlth. 2011)). Specifically, a variance is not available "from a dimensional requirement that prevents or financially burdens a property owner's ability to employ his property *exactly as he wishes*, so long as the use itself is permitted." *Yeager*, 779 A.2d at 598 (emphasis original); *see also Singer*, 29 A.3d at 150 (explaining that unnecessary hardship for a dimensional variance requires more than a mere desire to develop a property as the applicant wishes).

---

[3] I note the ZHB's observation that only one neighbor objected to the requested variance, while several other neighbors stated they had no objection or even that they favored granting the variance. However, the absence of objections by neighbors to a proposed variance does not support granting the variance. *See Polonsky v. Zoning Hearing Bd. of Mt. Lebanon*, 590 A.2d 1388, 1392 (Pa. Cmwlth. 1991) (citing *Christner v. Zoning Bd. of Mt. Pleasant*, 397 A.2d 30, 32-33 (Pa. Cmwlth. 1979) (stating that "[l]ack of objection has never been a basis for allowance of a variance")).

In applying these requirements, both this Court and the Pennsylvania Supreme Court have consistently held that variances cannot be granted under circumstances analogous to those present here.

For example, in *Larsen v. Zoning Bpard of Adjustment*, 672 A.2d 286 (Pa. 1996), the applicants sought a variance to allow them to build a deck within the rear setback of their property, asserting that the steep slope in back of their house made the deck necessary to provide a play area for their young child. The Pennsylvania Supreme Court, affirming a decision by this Court, held that the zoning hearing board had erred in granting the requested variance. *Id.* at 292. Our Supreme Court explained that, because the applicants were able to make reasonable use of their property for their residence, they were not entitled to a variance to add a deck; the Court observed that "the mere desire to provide more room for a family member's enjoyment fails to constitute the type of 'unnecessary hardship' required by the [MPC] . . . " and, critically, that "the granting of relief cannot be done simply to accommodate the changing needs of a growing family." *Id.* at 290 (citing *In Re Kline's Est.*, 148 A.2d 915, 916 (Pa. 1959) (denying a variance to enclose a porch to provide more usable room for family members who could not otherwise use the porch because of asthma and allergies, "finding that the owner's need for additional room for his family failed to establish an unnecessary hardship justifying the variance")); *see also Stoltzfus v. W. Manchester Twp. Zoning Hearing Bd.* (Pa. Cmwlth., No. 71 C.D. 2021, filed January 18, 2022),[4] slip op. at 10 (explaining that "it is undeniable that [the a]pplicants ha[d] a reasonable use of their property, which [was] zoned for one single-family home and they [were] using it as such" and that any purported "hardship" arising from their inability to enlarge their living quarters

---

[4] This unreported case is cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

"to house more members of their extended family than will fit into their house . . . [was] not caused by any aspects of the property itself . . . ") (citing *One Meridian Partners, LLP v. Zoning Bd. of Adjustment of City of Phila.*, 867 A.2d 706, 710 (Pa. Cmwlth. 2005)).

In *Christner v. Zoning Board of Mount Pleasant*, 397 A.2d 30 (Pa. Cmwlth. 1979), a zoning hearing board granted a dimensional variance reducing a side yard setback requirement from 16 feet to 6 feet to allow the applicants, who already had a residence on their lot, to add a separate garage with a second dwelling unit above it. In reversing a county court's affirmance of the variance, this Court rejected the conclusion that a unique condition creating an unnecessary hardship arose from the narrowness of the lot. *Id.* at 32. Instead, this Court concluded that "there is nothing which prevents the lot from being used in accordance with the zoning ordinance because it is presently being used, for the existing dwelling, in accordance with the zoning ordinance." *Id.* Therefore, the variance should have been denied. *Id.*; *see also McClintock v. Zoning Hearing Bd. of Fairview Borough*, 545 A.2d 470, 472-73 (Pa. Cmwlth. 1987) (applicant had reasonable use of his property where it was developed with a residence and there was space for a one-car garage, although setback requirements did not leave room for a two-car garage in the applicant's desired location); *Cohen v. Zoning Bd. of Adjustment*, 276 A.2d 352, 355 (Pa. Cmwlth. 1971) (holding that an applicant was not entitled to dimensional variance to expand his medical office attached to his home, where "[h]is medical practice ha[d] quite simply 'outgrown' his present quarters[;] a variance cannot be properly granted for mere personal or professional convenience").

In *Pequea*, the applicant sought a variance to add a second floor above an existing garage. In concluding that no variance could be granted, this Court

explained that "the mere desire for more space does not establish the requisite unnecessary hardship for a variance." 180 A.3d at 507. Because the applicant's property already had a residence and a garage, he was, perforce, making reasonable use of the property and could not meet his burden to demonstrate entitlement to a variance. *Id.* at 508-09 (citations omitted); *see also Worth v. Solebury Twp. Zoning Hearing Bd.* (Pa. Cmwlth., No. 1983 C.D. 2007, filed Sept. 8, 2008), slip op. at 15 (explaining that where the applicant's residential property had been developed with a house and garage and the applicant had been residing at the property without an additional garage, a second garage "cannot be considered necessary for reasonable use of the [p]roperty . . . ").

In *Del Greco v. Zoning Hearing Board of Whitehall* (Pa. Cmwlth., No. 367 C.D. 2011, filed June 15, 2012), the applicants already had a residence and a garage on their property but sought variances for a second garage above an existing basement addition, arguing that easements burdening the property prevented building the garage elsewhere on the property and that the zoning ordinance's garage size and height restrictions did not allow for the larger size of many present day vehicles or the need for multiple vehicles by families with teenage children. *Id.*, slip op. at 2-3. Citing *Larsen*, this Court upheld a common pleas court's reversal of the zoning hearing board's grant of the variances, noting the common pleas court's "observ[ation] that the mere desire to provide more room for a family's enjoyment does not satisfy the unnecessary hardship required for a variance." *Id.*, slip op. at 6 & 8-9.

In *Vito v. Zoning Hearing Board of Whitehall*, 458 A.2d 620 (Pa. Cmwlth. 1983), this Court reversed a common pleas decision and thereby upheld a zoning hearing board's denial of a variance for construction of a second garage

within the setback area of a residential lot. We explained that "[t]he correct test in this type of case is not whether the proposed use is a more desirable use than the use permitted but rather whether the property can be used in a reasonable manner within the restrictions of the ordinance." *Id.* at 622 (quoting *Radnor Twp. v. Falcone*, 328 A.2d 216, 219 (Pa. Cmwlth. 1974) (additional quotation marks omitted)). Because the property was "fully usable" as a residence with an existing garage, a second garage was not necessary to the reasonable use of the property. *Vito*, 458 A.2d at 622.

The same reasoning applied by both this Court and our Supreme Court in the cases discussed above applies equally here. Landowners already have a residence and a garage on their property and, accordingly, are already making reasonable use of the property. Because Landowners' requested variance is not necessary to enable them to pursue the reasonable use of their property, they have not met their burden to establish that they are entitled to it. The fact that Landowners would prefer to add a second garage large enough to house their trailers and additional automobiles cannot be considered an unnecessary hardship warranting the grant of a variance. The ZHB committed a clear error of law in concluding otherwise.

Further, although the inability to establish unnecessary hardship, even standing alone, is fatal to Landowners' variance application, the record also demonstrates that the requested variance is not the minimum required for relief. There was no dispute that Landowners could add a second bay to their existing garage without requiring a variance. R.R. at 61a. Landowners, however, did not wish to do so because they were "looking for two more bays." *Id.* Just as no hardship exists where reasonable use of a property is possible without a variance, the ability

to make reasonable use of the property without the requested variance also indicates that such variance is not the minimum variance required for relief. *See Dunn v. Middletown Twp. Zoning Hearing Bd.*, 143 A.3d 494, 503 (Pa. Cmwlth. 2016) (concluding that where an applicant could have one home on the property at issue without zoning relief, a requested variance for a desired second home on the property was "not the minimum variance that would afford relief"). Here, therefore, Landowners' requested variance for two more garage bays, where they could add one bay without a variance, was not the minimum variance that would afford relief. The ZHB should have denied the variance on this additional basis.

For these reasons, Common Pleas' order affirming the ZHB's decision should be reversed. Accordingly, I respectfully dissent.

_____
CHRISTINE FIZZANO CANNON, Judge


Judge Dumas joins in this dissent.